**MAUREEN F. G., Respondent Below, Appellant,**

v.

**GEORGE W. G., Petitioner Below, Appellee.**

Supreme Court of Delaware.

Submitted April 14, 1982.

Decided May 4, 1982.

Craig A. Karsnitz (argued), Ben T. Castle and · Marc Abrams of Young, Conaway, Stargatt & Taylor, Wilmington, for respondent-appellant.

Alfred J. Lindh (argued) of Lindh & Halberstadt, Wilmington, for petitioner-appellee.

Before McNEILLY, QUILLEN and HORSEY, JJ.

QUILLEN, Justice:

This is an appeal by the Mother from a decision of the Superior Court which affirmed a Family Court decision awarding custody of two minor children to the Father.

The parents separated on January 6, 1980. The two children, a girl born on October 19, 1974 and a boy born on May 14, 1976, remained in the marital home with the Mother until the end of April 1980 when the Mother, without notice to the Father, removed the children to Florida.

On May 12, 1980, the Father filed a petition for divorce and a petition for custody of the two children. An uncontested divorce was granted by Family Court decree on November 14, 1980. The custody hearing was held on November 25, 1980. An order was entered granting custody to the Father effective January 3, 1981. On the appeal to the Superior Court, a temporary stay was granted until January 17, 1981 but the Superior Court refused to extend the stay thereafter. Thus, the Family Court's decision granting custody to the Father became effective on January 17, 1981. The matter was submitted to and decided in the Superior Court in September, the affirming letter opinion bearing the date of September 24, 1981. The appeal to this Court followed. Four grounds for reversal are alleged.

We turn first to the error alleged as to the statutory standard. The statute requires the Family Court to "determine custody in accordance with the best interests of the child". 13 Del.C. § 722(a). It is argued that the Court used an improper standard in this case evidently because the language of the opinion fails to track in verbatim form the factors enumerated in the statute.[1] But any fair reading of the opinion below demonstrates a careful and thorough effort by the Trial Judge to reach a decision "in accordance with the best interests of the child[ren]". After noting the bias of several witnesses, the Trial Judge concluded his detailed opinion with the following comments:

" . . . The only apparent disinterested witness is [R. A.] and he projects an extremely positive picture of [the Father's] relationship with his children. The sole remaining witnesses are petitioner and respondent. The petitioner in his re-

---

1. The relevant section, 13 Del.C. § 722, reads:
"§ 722. Best interests of child.
    (a) The Court shall determine custody in accordance with the best interests of the child. In determining the best interests of the child, the Court shall consider all relevant factors including:
        (1) The wishes of the child's parent or parents as to his custody;
        (2) The wishes of the child as to his custodian;
        (3) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;
        (4) The child's adjustment to his home, school and community; and
        (5) The mental and physical health of all individuals involved.
    (b) The Court shall not presume that a parent, because of his or her sex, is better qualified than the other parent to act as custodian for a child, nor shall it consider conduct of a proposed custodian that does not affect his relationship to the child.

marks concerning visitation evidenced more concern for the child than did his former wife in her remarks with reference to visitation. That is not to say, however, that the Court agrees with his proposed arrangement. Additionally, I find that [the Father] was a more credible witness and I accept his testimony that essentially he was the primary parent. Accordingly, I conclude that custody of the minor children should be awarded to their father effective as of January 3, 1981."

The reference to "primary parent" is explained by the Court's description of the Father's testimony:

"Prior to the separation, [the Father] was the breadwinner for the family and his former wife, [the Mother], was a housewife. In spite of this arrangement [the Father] stated that in the latter part of their marriage, he was the primary parent for caring for the children. For example, he testified it was he who put the children to bed, got them up in the morning, fixed their breakfast, and in general, took a much more active role in their life than did their mother. [The Father] did relate that some of this may have been due to his wife's illness during the latter stages in which they lived together."

■ Since the Court had contesting parents before it, it obviously considered the wishes of the parents [§ 722(a)(1)]. In analyzing the relationship of the parents and the children, who were six and four at the time of the hearing, the Court considered circumstantially perhaps the best evidence of any intelligent "wishes of the child[ren]" [§ 722(a)(2)]. It is apparent from the Court's express language that it considered the "interaction and interrelationship of the child[ren] with [their] ... parents" [§ 722(a)(3)]. And there was ample evidence of the children's adjustment to environmental factors and of their health [§ 722(a)(4) and (5)]. It is also clear by the

opinion that these factors were considered by the Trial Judge. The Superior Court correctly concluded "that the Family Court Judge rested his decision upon proper standards involving the best interests of the children."

It is also clear that 13 *Del.C.* § 729, which deals with modification of a prior custody decree, is not applicable to this case where, to use the words of the Superior Court, "there is no prior custody order by stipulation of the parties or otherwise."

The other three grounds for reversal relate to the sufficiency of the record in light of the statutory tools available for developing a record.

■ First, it is argued that the Family Court failed to consider the wishes of the children as required by 13 *Del.C.* § 722(a)(2). It is true that the opinion does not say that these young children expressed a direct preference for one parent over another. But as the appellee's brief says: "By accepting [the Father's] testimony, Judge Horgan effectively found that [the Father] was the parent primarily involved in the care and nurture of the children and the parent who had the closest relationship with them." In view of the age of the children, and the desire for rational decision making, that is proper evidence from which to evaluate the children's "wishes".

■ On this point, we also agree with the Superior Court that the statute relating to interviewing the child who is subject to a custody proceeding is permissive and not mandatory.[2] Since the Mother, who now objects to the absence of the interview, failed to bring the children with her from Florida and since neither party at trial requested an interview, the Trial Judge can hardly be faulted for failing to do so. Obviously, the parents, both as a matter of concern for the young children who were then in Florida and as a matter of litigation

2. The section, 13 *Del.C.* § 724(a), reads:

"§ 724. Interviews.

(a) The Court may interview the child in chambers to ascertain the child's wishes as to his custodian and may permit counsel to be present at the interview. The Court shall, at the request of a party, cause a record of the interview to be made and it shall be made part of the record in the case."

tactics, felt interviews would not be helpful. The Trial Judge certainly did not abuse his discretion by failing to overrule the implied agreement of the parents. It would have been awkward and perhaps risky to the children of six and four for him *sua sponte* to compel their production in Delaware from Florida for the purpose of testimony in family litigation. The Mother effectively barred access to the children and the interview by her own actions.

■ The second ground as to the inadequacy of the record is also based on a statute which permits the Court to order a staff investigation in custody cases.[3] The statute says "the Court shall, upon motion of either party or upon the Court's own motion, order" such an investigation. We agree with the Superior Court's view of the statute and cannot improve on Judge Christie's comment:

"The statute provides that either party may move for a staff investigation by the staff of the Family Court or the Court may order one *sua sponte*. As I read the statute, it does not require that a custody investigation be ordered where neither party seeks such investigation. If [the Mother] wished to demand a custody investigation by the Court staff, she should have made such demand in the Family

Court. She failed to do so. In any event, there is no indication that such a report would have revealed important information which was not brought to the Court's attention at the hearing. I find no abuse of discretion in the Court's failure to order an investigation by the Court staff under the circumstances as they then existed in this case."

It should be pointed out the Father presented, in addition to his own testimony, the testimony of his father, his aunt, a male friend and a female friend. The Mother presented, in addition to her own testimony, the testimony of her father and a relative of Mr. G. The case was difficult because of divergent testimony. While the Trial Judge suggested that a staff investigation might help by giving some "indication as to which party is the more truthful", that credibility decision was ultimately his to make. There was no abuse of discretion in not ordering, *sua sponte*, an investigation by staff with its attendant delay, interstate nature, expense, testimonial problems and slight chance of impact on the decision of the Court.

■ Finally, as to the sufficiency of the record, the Mother argues that the Superior Court abused its discretion in not rehearing the case as it is statutorily permitted to do.[4]

3. The statute, 13 *Del.C.* § 725 reads:
"§ 725. Investigations and reports.
(a) In all custody proceedings, the Court shall, upon motion of either party or upon the Court's own motion, order the Court staff to investigate and file a written report or reports concerning custodial arrangements for the child. Except as otherwise provided herein, such reports shall be considered confidential and shall not be available for public inspection unless by order of Court for good cause shown. The cost of each investigation up to a maximum of $50 may be assessed as part of the costs of the proceeding.
(b) In preparing a report concerning a child, the staff investigator may consult any person who may have information about the child and his potential custodial arrangements. Upon order of the Court, the investigator may refer the child to professional personnel for diagnosis and evaluation. The investigator may consult with and obtain information from medical, psychiatric, or other expert persons who have served the child in the past without obtaining the consent of the parent or the child's custo-

dian; but the child's consent must be obtained if he has reached the age of 16, unless the Court finds that he lacks mental capacity to consent. If the requirements of this section are fulfilled, the investigator's report may be received in evidence at the hearing.
(c) The investigator's report to the Court and the investigator's file of underlying data and reports, complete texts of diagnostic reports made to the investigator pursuant to this section, and the names and addresses of all persons whom the investigator has consulted, shall be available for examination by counsel and by any party not represented by counsel for good cause shown. Any party to the proceeding may call the investigator and any person whom he has consulted for cross-examination. No party may waive his right of cross-examination prior to the hearing."

4. The statute governing appeals from custody orders is 10 *Del.C.* § 961 and it includes subsection (c) which reads:
"(c) Any Judge of the Superior Court may rehear the case; and for that purpose shall

This statute was construed along with the statute granting the Family Court "exclusive original civil jurisdiction" in custody proceedings in *Husband, P v. Wife, P*, Del. Supr., 348 A.2d 327 (1975).[5] After tracing the legislative history, this Court concluded at 348 A.2d 329:

> ". . . Clearly, the language vests a permissive right in the Superior Court to hear the case again. It is equally clear that there is no mandate to do so. In brief, the Court has a discretion to order a rehearing with its attendant production of the child and the witnesses.
>
> In sum, an appeal on the record is the norm in a custody case with discretionary power in the Superior Court to order a rehearing. There is no right to a trial *de novo*."

Notwithstanding the fact that "an appeal on the record is the norm", this argument of the Mother has some merit. The Family Court had noted that this case "is an extremely difficult custody case" and had lamented the limitations of the record on the crucial issue as to which parent related best to the children. Moreover, during the pendency of the appeal in the Superior Court, from as early as January 17, 1981, the children were available in Delaware for an interview. In short, there were factors favoring a trial *de novo* as permitted under the statute.

On the other hand, it is noted the Family Court's decision was challenged in the Superior Court on the basis that the findings were not supported by sufficient evidence. The Superior Court noted that the Family Court opinion indicated the Trial Judge had considered the testimony of all the witnesses and that "[a] limited record is not necessarily lacking in substantial evidence." Coupled with the Superior Court's prior conclusion that there was no indication that a staff report "would have revealed important information which was not brought to the [Family] Court's attention at the hearing", it is apparent that the Superior Court was satisfied that the record made by the parties in the Family Court contained the essence of the dispute and the decision in Family Court was a rational resolution.

While we think the question is close, especially given a specific motion by the Mother for a rehearing in the Superior Court and the then ready availability of the children for an interview, we cannot conclude that the Superior Court abused its discretion in refusing to hold a trial *de novo*. The parties had a full opportunity to make a record in the Family Court. The nature of the inquiry on the facts in this case inherently requires a decision on a limited record. Reasonable people can disagree about the advisability of interviewing these young children given the circumstances existing at this point in their lives. Somebody has to decide the case. The Family Court Judge did. His decision was rational. There was and is no clear indication that a decision by someone else would be better. Under these circumstances, we find the Superior Court could properly accept the decision of the Family Court under normal standards of appellate review.

The decision of the Superior Court is affirmed.[6]

---

cause the child to be brought before him, and also the witnesses on behalf of the State and the custodian, and upon such rehearing, the Judge of the Superior Court shall make such order in the matter as he deems proper."

5. The grant of "exclusive original civil jurisdiction" in custody proceedings appears at 10 *Del.C.* § 921.

6. Our decision herein should not be read as any general indication that the Family Court should not use tools made available by statute. The interview of the children here was effectively denied by the Mother. An investigation by staff, logistically somewhat difficult, probably would have been of small value as to the issue presented and the limited evidence apparently available on that issue. These circumstances are not always present.