IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREW KIRBY,[1] | § | |
| | § | No. 371, 2024 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CK20-02161 |
| TATUM PERKINS, | § | Petition Nos. 24-11972, |
| | § | 24-08596 |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: July 2, 2025
Decided: August 6, 2025

Before **VALIHURA**, **TRAYNOR**, and **GRIFFITHS**, Justices.

## ORDER

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:[2]

(1)  Appellant Andrew Kirby ("Father") and Appellee Tatum Perkins ("Mother") entered into a stipulated custody order (the "Custody Agreement") providing that their minor child ("Child") would attend Holy Cross school "as soon as practicable."[3]  After Father found out that Mother had enrolled Child at Lake

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

[2] We draw the facts from our previous order remanding this action to the Family Court, *see* Dkt. 21 [hereinafter Supr. Ct. Order], as well as the Family Court's order on remand, Dkt. 23 [hereinafter Order on Remand].

[3] Supr. Ct. Order at 2.

Forest North school, he petitioned the Family Court to issue a rule to show cause against Mother, alleging that she had not complied with the Custody Agreement.[4] Mother responded by filing a petition to modify the Custody Agreement.[5] The Family Court held a consolidated hearing on the petitions. The hearing took place a month before the school year was to begin. The evidence presented at the hearing primarily focused on whether Holy Cross (a local private school) was academically superior to Lake Forest North (a local public school). Father wanted Child to attend Holy Cross. Mother wanted Child to attend Lake Forest North. The court later issued its first order modifying the Custody Agreement and vesting Mother with academic decision-making authority for Child's kindergarten year.[6] In its order, the court found that it was not "practicable" to send Child to Holy Cross due to Mother's financial limitations and travel constraints.[7] Father appealed to this Court.

(2) We remanded to the Family Court to reconsider the petitions. We said that "where Child's school attendance is at issue, some of the statutory [best interests] factors may be of questionable utility. But that does not excuse the court from considering other factors relevant to Child's best interests for kindergarten. At a minimum, the Family Court was required to meaningfully evaluate Child's best

---

[4] *Id.* at 3.

[5] *Id.*

[6] *Id.* at 4–5.

[7] *Id.*

2

interests by considering all relevant factors."[8]  The Family Court did not refer to 13 *Del. C.* § 729 for modifying custody orders or 13 *Del. C.* § 722's best interests factors.[9]  We also found that the Family Court did not adequately explain its conclusion that it was not "practicable" for Child to attend Holy Cross, so we requested that the court "again consider the Custody Agreement in its analysis on remand."[10]  We directed the court to either reconsider the petitions on the existing record or hear additional evidence and reconsider the petitions.  We retained jurisdiction.

(3)    The Family Court opted to hold an additional hearing that lasted two days, with testimony coming from the parties, paternal grandfather, and the principal of Holy Cross.  The court then issued its decision modifying the Custody Agreement.  The court first evaluated Child's best interests under Section 722's best interests factors based on the evidence from the hearing.  It found that four factors favored Mother's position,[11] four were neutral,[12] and none favored Father's position.  The

---

[8] *Id.* at 8 (internal citations and quotation marks omitted).

[9] *Id.*

[10] *Id.* at 9.

[11] Factors one (wishes of the parents), three (interaction of the child with the parents and other family members), four (the child's adjustment to home, school, and community), and six (parents' compliance with rights and responsibilities to their child) favored Mother's position.  Order on Remand at 2–6; *see also* 13 Del. C. § 722(a).

[12] Factors two (wishes of the child), five (mental and physical health of all involved), seven (evidence of domestic violence), and eight (criminal history) were neutral.  Order on Remand at 2–6; *see also* 13 Del. C. § 722(a).

court vested Mother with authority to "make school-related decisions for the child."[13] The court denied Father's rule to show cause petition.[14]

(4) In reaching its conclusions, the court found that Mother was present in Child's everyday life and was better able to articulate Child's likes and dislikes. As to Father, the court found the opposite. Father had not been as present in Child's life and the paternal grandfather had much more interaction with Child than Father did. In the end, the court found that Father was unable to introduce any compelling evidence about his relationship with Child.

(5) In addition to the enumerated best interests factors, the Family Court also considered other relevant factors in reaching its conclusion. The court gave weight to the Custody Agreement; compared the similarities and differences in public and private education; weighed the credibility of Father's answers to leading questions provided by his attorney; and considered paternal grandfather's unfounded allegations of racial discrimination at Lake Forest North.[15] Also of note, the court stated that, because paternal grandfather demonstrated that he would cover the costs of Holy Cross, the "practicability" problem had been resolved.[16] But the court further noted that paternal grandfather was not bound by an order of the Family

---

[13] Order on Remand at 16.

[14] *Id.*

[15] *Id.* at 6–13.

[16] *Id.* at 7.

4

Court. Because paternal grandfather was not bound, he could change course on his commitment to pay school costs at any moment, leaving Mother with no avenue to compel his compliance.[17]

(6)   The court concluded its holistic analysis by contrasting Child's relationships with Mother and Father: "Mother demonstrated a greater commitment to [Child]'s best interest. She is more engaged with [Child] in general and more involved in [Child]'s education. Father's various proposals for school attendance sounded more of strategy th[a]n sincerity. Mother shall be empowered to make the decisions about school attendance if the parents are unable to agree."[18]

(7)   After the Family Court issued its order, the parties submitted simultaneous supplemental submissions in this Court. Mother asks that we affirm. Father asks that we reverse and remand. He raises three issues. First, that the Family Court erred in its best interests analysis because it excluded an out-of-court statement by Child and denied Father's request to interview Child. Second, that the court erred in its consideration of the Custody Agreement because the court did not find that attending Holy Cross—as stated in the Custody Agreement—was not in Child's best interests. And last, that the court improperly relied on sources not presented at the hearing.

---

[17] *Id.* at 6.

[18] *Id.* at 14.

(8)     First, Father attempted to introduce an out-of-court statement by Child during the hearing. The Family Court denied that request because Father's attorney did not provide the statement to Mother "reasonably" in advance of the hearing. Father contends that this is error because Mother had time to review the statement before the second day of the hearing, which was weeks later. He also contends that it was error for the court to deny his request to interview Child about that statement. Father presumably wanted the court to consider Child's statement to establish that Section 722(a)(2)—the child's wishes—favored him.

(9)     To introduce Child's out-of-court statement into evidence, Father must meet the criteria under 13 *Del. C.* § 724(d). Section 724(d) states that "[a]n out-of-court statement made by a child may be admitted into evidence by the Court if reasonable notice of the intention to offer the out-of-court statement is given to all parties and: (1) The child is available to be interviewed[.]" Section 724(d) is permissive, not mandatory, and is applied under the sound discretion of the trial court.[19] Here, the court found that, due to the expedited nature of the remand schedule, Mother was not provided reasonable notice under Section 724(d). Apart from the reasonable notice issue, the court declined to interview Child because it

---

[19] *See Price v. Div. of Fam. Servs.*, 286 A.3d 504, 2022 WL 10861025, at *3 n.12 (Del. Oct. 18, 2022) (TABLE) (stating that the Family Court has "discretion to interview the Child" and further stating that Section 724 is "permissive"); *Maureen F.G. v. George W.G.*, 445 A.2d 934, 936 (Del. 1982) ("[T]he statute relating to interviewing the child who is subject to a custody proceeding is permissive and not mandatory.").

6

stated that the interview would be little help for the issues the court had to decide. The court found the child's-wishes factor to be neutral because no evidence was presented.[20] Even if the court had admitted the statement and found that factor favored Father, the Family Court would have found only one of the enumerated factors in Section 722 favored Father's position. In other words, the outcome would not have changed. This is not reversible error.

(10) Next, Father correctly notes that to modify a custody order, the court must first find the custody order is not in the best interests of the child and then make the change reflecting what is in the best interests of the child.[21] He contends that the Family Court never determined that attending Holy Cross was not in the best interests of Child, so the court could not modify the Custody Agreement. We disagree.

(11) The court's analysis touches on four reasons that, taken together, establish that Mother carried her burden. First, Mother is heavily involved in Child's life, and Father is less involved. Second, although Holy Cross students performed better on standardized testing, standardized testing scores are not the only consideration in deciding what is in Child's best interests. Third, although the

---

[20] Order on Remand at 3.

[21] *See Morrisey v. Morrisey*, 45 A.3d 102, 106 (Del. 2012) ("The [custody agreement is] relevant under the best interest of the child test analysis because the moving party must show that the existing agreement is currently not in the best interest of the child. If the movant fails to meet this burden then the modification is not appropriate and the agreement should be enforced as written.").

"practicability" issue had been resolved by paternal grandfather's willingness to pay for Holy Cross, the Family Court cannot compel paternal grandfather to pay for Holy Cross, which could leave Mother in a quandary of covering the costs of Holy Cross. Fourth, in making credibility determinations, the court found that Father struggled to justify his preferred school choice because his attorney had to ask him leading questions to elicit testimony regarding the purported perks of attending Holy Cross. Although the Family Court could have stated its burden analysis in clearer terms, we are satisfied that Mother carried her burden.

(12) Last, Father argues that the Family Court improperly took judicial notice of secondary sources—not raised during the hearing—under Delaware Rule of Evidence 201 to cast aside the Holy Cross principal's testimony regarding standardized testing scores.

(13) The Family Court did not use the complained-of secondary sources to contradict the Holy Cross principal's testimony. The principal testified that Holy Cross's standardized testing aligns with State common core standards. In its order, the Family Court stated that there "is no logical basis for comparing the [Holy Cross] assessments with the assessments administered by the state of Delaware. It is a false equivalence."[22] The Family Court did not rely on the complained-of secondary sources for this statement. Instead, those sources are cited later when the Family

---

[22] Order on Remand at 8.

Court discussed Delaware's public-school-system rank among other States, as well as other factors that can correlate with student success. The court did not contradict the Holy Cross principal's testimony with its own secondary sources. That testimony and those sources touch on distinct topics.[23] And even if we agreed with Father that the court did not properly take judicial notice of the secondary sources under DRE 201,[24] the court's statements stemming from those sources were not so central to its decision as to rise to reversible error.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

---

[23] Father also relies on this Court's decision in *Tribbitt v. Tribbitt*, where we reversed the Family Court for relying on its own "internet search" and discrediting expert testimony regarding hourly wage estimates in a property division and alimony dispute. 963 A.2d 1128, 1130–31 (Del. 2008). *Tribbitt* is different. In this case, the Family Court's "false equivalence" statement is not tied to its reliance on the secondary sources.

[24] DRE 201(b)(2) states that the court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." DRE 201(e) states: "On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard."