340 S.E.2d 176

**George A. ROSE**

v.

**Sharon A. ROSE.**

No. 16556.

Supreme Court of Appeals of
West Virginia.

Oct. 23, 1985.

Dissenting Opinion Feb. 7, 1986.

William W. Talbott, Talbott & Alsop, Webster Springs, for appellant.

David B. McMahon, Charleston, for appellee.

BROTHERTON, Justice:

This is an appeal from a final order of the Circuit Court of Clay County entered on August 14, 1984, granting a divorce to the parties herein, allowing child support and alimony to Mrs. Rose, and awarding custody of the couple's child to Mr. Rose.

Mr. and Mrs. Rose, both originally from Clay County, were married in Ohio on August 9, 1969. They had one child, Brian, on January 7, 1974. Trouble started in the marriage, evidently because Mr. Rose would not participate in any social activities outside the home. Mrs. Rose eventually started to attend social activities on her own without the accompaniment of her husband. At one of these events she apparently met another man. Mr. Rose, although suspicious of his wife's activities, did nothing until his wife announced that she was leaving. At that time the parties agreed that their son, Brian, who was then 10 years of age, could choose the parent he wanted to stay with. Originally Brian chose his mother. However, after a talk between Brian and Mr. Rose, in which Mr. Rose explained to Brian that Brian's mother had left Mr. Rose for another man, Brian changed his mind and decided to stay with his father.

Mr. Rose filed his complaint on April 17, 1984, alleging irreconcilable differences and asking for a divorce, custody, and possession of the home and furnishings, plus a reasonable property settlement. Mrs. Rose filed a timely answer and counterclaim, admitting irreconcilable differences and counterclaiming for a divorce, custody, support, health insurance, alimony, payments of debts, exclusive possession of the marital home, possession of and title to one of their vehicles, and an equitable distribution of the assets of the marriage.

At the hearing on the case, Mr. Rose called the parties' son, Brian, to the stand as a witness. On the motion of the parties the court itself made an inquiry and determined that the boy was competent to testify. Over objection of counsel for Mrs. Rose, the court then took Brian into chambers for examination with only the judge and the court reporter present. At the conclusion of the testimony the court granted a divorce on the grounds of irreconcilable differences and awarded "joint custody" of Brian to Mr. and Mrs. Rose, but gave actual physical custody to Mr. Rose.[1] This was done in spite of the fact that the court found that Mrs. Rose was the primary caretaker and that neither party was unfit. The court awarded Mrs. Rose $100.00 per month child support for the months during which Brian was with her on the weekends and $200.00 for the one month during the summer in which she would have him for an additional two full weeks. The court awarded Mrs. Rose $1.00 per month alimony. The court also granted Mr. Rose possession and use of the marital home.

Mrs. Rose now appeals to this Court, citing the following assignments of error:

1. That the court erred in failing to award custody of Brian to Mrs. Rose, whom the court found to be the primary caretaker and fit.

2. That the court erred by examining Brian, who was called as a witness, outside the presence of counsel or the parties, over the objection of the appellant.

3. That the court erred in failing to award Mrs. Rose alimony, other than the nominal $1.00 a month alimony.

4. That the court erred in failing to order any equitable distribution of the marital home.

---

1. Mrs. Rose was awarded visitation on every weekend, two weeks in the summer, and alternate holidays.

2. *Garska v. McCoy* dealt with the issue of a child testifying as to his preferred custodian only in dicta, the issue not being raised in the facts of the case. Nevertheless, [i]t is well established that in controversies relating to the custody and care of children, the child, if he or she is of the age of discretion, should be consulted and due

## I.

The first assignment of error alleges that the court erred in failing to award custody of the child to Mrs. Rose when the court found her to be the primary caretaker and fit. This Court ruled in *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981), that: "In a divorce proceeding where custody of a child of tender years is sought by both the mother and father, the court must determine in the first instance whether the primary caretaker is a fit parent, and where the primary caretaker achieves the minimum, objective standard of behavior which qualifies him or her as a fit parent, the trial court must award the child to the primary caretaker." *Id.*, syl. pt. 6. This is, however, a presumption which may be rebutted. "Where there is a child under fourteen years of age, but sufficiently mature that he can intelligently express a voluntary preference for one parent, the trial judge is entitled to give that preference such weight as circumstances warrant, and where such child demonstrates a preference for the parent who is not the primary caretaker, the trial judge is entitled to conclude that the presumption in favor of the primary caretaker is rebutted." *Id.*, syl. pt. 7.[2] The trial court found that Brian was a bright, intelligent ten-year-old who was doing very well in school. He testified that he would prefer to live with his father. In light of this testimony, we cannot say that the trial court erred in finding that the presumption in favor of Mrs. Rose as primary caretaker was rebutted, and in granting custody of Brian to Mr. Rose. We, therefore, affirm the judgement of the trial court on this issue.[3]

## II.

The appellants also assign as error that the court relied upon testimony

weight should be given to his or her wishes in the matter of custody and care." *State ex rel. Kiger v. Hancock*, 153 W.Va. 404, 168 S.E.2d 798, 803 (1969). *See J.B. v. A.B.*, 161 W.Va. 332, 346, 242 S.E.2d 248, 254 n. 3 (1978).

3. This does not mean that the child's decision is binding on the trial court or that the parties are forbidden to introduce evidence to rebut the child's testimony.

from the child in a private interview without the parties or counsel for the parties present. Chief Justice Miller has covered this subject well in his dissenting opinion in *Graham v. Graham*, 174 W.Va. 345, 326 S.E.2d 189, 191 (1984). Although the issue was not before the Court in *Graham*, we adopt Chief Justice Miller's reasoning and set out his opinion in pertinent part below:

There is merit in permitting the trial judge to conduct a neutral *in camera* interview on the preference question after a favorable resolution of the maturity or competency issue, as outlined by the New York Court of Appeals in *Lincoln v. Lincoln*, 24 N.Y.2d 270, 272, 247 N.E.2d 659, 660, 299 N.Y.S.2d 842, 843 (1969):

"It requires no great knowledge of child psychology to recognize that a child, already suffering from the trauma of a broken home, should not be placed in the position of having its relationship with either parent further jeopardized by having to publicly relate its difficulties with them or be required to openly choose between them."

It should be noted, however, that in *Lincoln* the court concluded: "We are confident that the Trial Judges recognize the difficulties and will not use any information, which has not been previously mentioned and is adverse to either parent, without in some way checking on its accuracy during the course of the open hearing." Many courts have approved of trial judges discussing custody preferences with children *in camera* without the parents or their counsel present, provided procedures designed to protect the parents' rights are followed.

Where both parties consent to the judge's interview, there is obviously no problem. Where consent cannot be obtained, it would appear advisable to have a record made of the *in camera* hearing and to permit the parties to have access to the record by way of an accurate or verbatim summary. A further opportunity should then be afforded for either party to contradict the accuracy of the facts given at the *in camera* hearing. 174 W.Va. at 348–349, 326 S.E.2d at 192–93 (citations omitted).

■■■■ The criticism of the judge's behavior in *Graham* is not present in this case. In *Graham* the trial judge took a six-year-old child back into his chambers out of the presence of the parties and out of the presence of the court reporter. In this case, a transcript was made of the conversation between the judge and Brian. We find no error in the proceedings.[4]

**4.** As already discussed, an inquiry should be made into the child's intelligence and maturity to see if the child's choice was intelligently made. Equally important, however, is the child's rationale for his decision. In order to be accorded weight, a child's preference for one parent over the other ought to be based on good reason. *See, e.g., Commonwealth ex rel. Shamenek v. Allen*, 179 Pa.Super. 169, 176, 116 A.2d 336, 339 (1955). In making its examination of the child, the trial court should try to explore several aspects of the child's decision. We offer the following guidelines to the trial court as to areas which may have an effect on the weight placed on the child's decision:

1. The trial court should give greater weight to the wishes of a child which are expressed with strength, clearness, or with great sincerity. *See, e.g., Commonwealth ex rel. McDonald v. McDonald*, 183 Pa.Super. 411, 416, 132 A.2d 710, 713 (1957).
2. A child's preference should be given less weight where it appears that the preference is based on a desire for less rigid discipline or restraint. *See Davis v. Davis*, 355 P.2d 572, 574–75 (Okla.1960).

3. The trial court should investigate whether the statement of preference by the child was induced by the party in whose favor the preference was expressed. If so, said statement of preference should be accorded little, if any, weight. *See, e.g., Wallis v. Wallis*, 235 Md. 33, 37–38, 200 A.2d 164, 166 (1964).
4. Where an otherwise intelligent child makes an illogical decision based on unimportant factors, the trial court may disregard the child's statement of preference. *See, e.g., Metz v. Morley*, 29 A.D.2d 462, 466, 289 N.Y.S.2d 364, 368 (1968) (child's reason for preferring her mother's home was accessibility of boating, fishing, and swimming facilities on the lake near which the mother's trailer home was located.)

In the present case the trial court did make an inquiry as to the rationale behind the child's decision, and found that Brian wished to stay with his father because he did not like his mother's new boyfriend and "what went on." While a deeper inquiry into some of the areas set out above may have been helpful in this case, we find that upon the facts of this case the inquiry by the trial judge showed the child's decision to be based upon a logical, unbiased reason and,

## III.

▇ The appellant's assignment of error dealing with the refusal of the trial court to order an equitable distribution of the marital home is groundless. "A trial court in the exercise of its sound discretion under the provisions of W.Va. Code 48–2–15, may award the exclusive use of the home property to a spouse incident to obtaining custody of the children." Syl. pt. 2, *Murredu v. Murredu*, 160 W.Va. 610, 236 S.E.2d 452 (1977). Mr. Rose, in this case, is the custodial spouse and the trial court did not abuse its discretion in granting him exclusive use of the marital home.

## IV.

▇ The final assignment of error challenges the amount of alimony awarded Mrs. Rose. The trial court awarded her alimony in the amount of $1.00 per month. This amount obviously was not a serious attempt to support Mrs. Rose, but instead a device which would keep alive the prospect of further alimony in the future. Unfortunately, the lower court's basis for awarding only a nominal amount of alimony is unclear. The amount of alimony is largely within the discretion of the trial court. *See, e.g., Nichols v. Nichols*, 160 W.Va. 514, 518, 236 S.E.2d 36, 38 (1976). Nevertheless, we exercise some review, and for that review to be effective the record must reflect the basis of the trial court's decision. We, therefore, remand the case for a statement of the factual basis for the alimony award.

Remanded with directions.

McGRAW, Justice, dissenting:

The trial court, in my view, clearly abused its discretion in its determination that the primary caretaker presumption was rebutted in this proceeding by the expression of a ten-year-old's preference based upon his professed dislike for the primary caretaker's new social companion. In Syllabus Point 7 of *Garska v. McCoy,*

167 W.Va. 59, 278 S.E.2d 357 (1981), this Court permitted consideration of the preference for one parent by a child under the age of fourteen only where the child is "sufficiently mature that he can intelligently express a voluntary preference for one parent." The majority confuses intelligence with maturity and ignores substantial evidence that the preference expressed was not voluntary.

As the majority notes, the child chose to reside with his mother when she departed the marital residence on March 13, 1984. A few weeks later, in early April, 1984, the father picked up the child at school and told him that he had seen the child's mother and another man in a parked car next to the highway. The record does not reflect the father's characterization of their activities to the child. In any event, the child soon indicated to his mother that he now desired to live with his father. He reiterated this desire to the trial court at the *in camera* hearing.

A review of the record of the *in camera* hearing reveals only the most perfunctory of examination:

THE COURT: Now, have you thought about with which parent you would like to live?

ANSWER: Yes.

THE COURT: Have you made a decision with regard to which parent you would like to live with?

ANSWER: Yes.

THE COURT: Without telling me why, which parent would you rather live with?

ANSWER: With my dad.

THE COURT: Now tell me why?

ANSWER: I don't like Denver [the new social companion] and I don't like what went on.

THE COURT: Have you spent any time with Denver?

ANSWER: No, but I have been with him at fireworks and I didn't like him. I stayed away from him.

therefore, worthy of being accorded some weight in deciding the issue of custody. *See*

*generally* Annot., 4 A.L.R.3d 1396 (1965).

THE COURT: Is there anything else you'd like to tell me?

ANSWER: No.

THE COURT: That is all the questions I want to ask you, Brian.

Obviously, information concerning what the child thought "went on" between his mother and her new boyfriend would have been helpful in determining the reason for the child's dislike of him. It is impossible to ascertain from the record what the child had been told by his father concerning the new boyfriend. There is absolutely no indication in the record of the basis for the child's animosity toward the new boyfriend. Moreover, even if the child did genuinely dislike this gentleman, no effort was made to explore the character of the relationship between the child's mother and the boyfriend. It is unimaginable that a child's dislike of his or her primary caretaker's casual acquaintances could alone form a rational basis for rebuttal of the primary caretaker presumption.

With respect to the child's maturity, both the majority and the trial court rely upon his apparent intelligence and his performance in school as if maturity and intellect were one and the same. Although superior intellect may enhance the process of maturation, as any experience with intellectually gifted children will quickly confirm, the two do not always operate in tandem. The swift reversal of the child's initial choice to reside with his mother is indicative of at least his inconstancy, if not his immaturity.

Curiously, the very reasons this case should have been reversed and remanded are buried in footnote number four of the majority opinion. They involve the voluntariness aspect of this Court's holding in *Garska v. McCoy*. The majority states, obviously ignoring the woefully inadequate colloquy in the instant case, that "the trial court should try to explore several aspects of the child's decision." First, the majority notes that the child's choice should be expressed with "strength, clearness, or with great sincerity." Responses such as "yes" or "with my dad" are hardly elaborate expressions of sincere personal choice. Second, the majority observes that preference based on "a desire for less rigid discipline" should be given less weight. Absolutely no inquiry was made of the child in this proceeding regarding this factor. Third, the majority states that a child's preference "induced by the party in whose favor the preference was expressed" should be accorded little weight. Clearly, not only did the child's preference change after the father's interjection of the relationship between the mother and her boyfriend, the mother alleged that the father "buttered Brian up" before the divorce proceeding by buying him lavish gifts and by catering to his every whim. Finally, the majority notes that an "illogical decision based on unimportant factors" by a child with respect to preference may be disregarded. Without further exploration of the actual relationship between the mother and her new boyfriend, the child's lack of affection for him is relatively of little importance. The majority's candid admission that "a deeper inquiry into some of the[se] areas ... may have been helpful in this case" is a paradigm of understatement.

The unfortunate message of the majority's opinion is unavoidably clear. In a custody battle, all's fair in the war over the love of a child. Surreptitious surveillance in order to gain some advantage with the child is encouraged. Psychological ploys designed to destroy the child's affection for the other parent are promoted. Even outright bribery is rewarded. In the end, the parent who has been most successful in destroying the child is declared the winner. Abraham Lincoln once said, "Love is the chain whereby to bind a child to his parents." F. Carpenter, *Six Months at the White House with Abraham Lincoln* (1866). The majority's opinion permits the award of a priceless gift not to a parent motivated by the love of a child, but rather by the hatred of another parent. Because I am of the view that, as between the two, love should prevail, I am compelled to voice my dissent.