512 S.E.2d 572

**Edward C. ARBOGAST, Plaintiff Below, Appellee,**

v.

**Patricia L. LAKE (Formerly Arbogast), Defendant Below, Appellant.**

**No. 24431.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 1998.

Decided Dec. 9, 1998.

Douglas A. Cornelius, Clarksburg, West Virginia, Attorney for Appellant.

William W. Talbott, Webster Springs, West Virginia, Attorney for Appellee.

PER CURIAM:

The appellant in this proceeding, Patricia L. Lake, petitioned the Circuit Court of Webster County to modify a prior child custody order and to award her the exclusive custody of her five-year-old son. The circuit court denied that petition. In the present proceeding the appellant claims that that denial was based on the child's stated preference to remain with his father, and she also asserts that the child was incompetent to state such preference. She claims that, in view of the child's incompetence to state a preference, the circuit court erred in relying on the statement of preference in ruling on her petition for modification.

## BACKGROUND FACTS

In 1995, the appellant and the appellee, while obtaining a divorce from each other, entered into a "Joint Parenting Agreement" relating to the care and custody of their infant son. That agreement was accepted by the Circuit Court of Webster County, and on January 19, 1995, the court entered an "Agreed Order" which, in effect, adopted the agreement.

In the Agreed Order, the appellant and the appellee were awarded the joint and equal legal and physical care, custody, and control of their son, with the provision that the child stay with each of the parties for alternative three week periods until he entered pre-school in 1996. It was further provided that as 1996 approached, if the child was able to articulate a clear preference as to whether he desired to attend pre-school near the residence of either party, the parties would acquiesce to his wishes and would reform visitation so that they could share time equally with the child when they were not working and when the child was not in school. Additionally, the order appointed a psychologist to monitor the well-being of the child and to assist the Court in determining whether the child was emotionally and intellectually able to voice a preference at the time of the pre-school decision. Finally, the Agreed Order stated:

[T]he Court may interview the child outside the presence of the parties and counsel in accordance with Family Law Master Rule 16 and that the Court may direct that the child reside during the school year primarily with the parent selected by the child, but if the child refuses or fails to state a preference, the Court will decide the issue based upon the best interests of the child.

Prior to, and at the time of the divorce, both parties resided in Webster County, but on July 28, 1995, the appellant married Timothy R. Stout and moved to Bridgeport, Harrison County.

After moving to Harrison County, the appellant, on May 23, 1996, petitioned the Circuit Court of Webster County to modify the child custody arrangement and to award her custody of the child. In the petition she asserted that the court-appointed psychologist had concluded that the child was too young to state a preference as to where he would like to attend pre-school. She also stated that she and her new husband had purchased a new home and:

[S]he and her husband can and will provide said child with a proper and beneficial home and living environment which will further the best interests of said child; and . . . she does not and will not be away from said child for work purposes while said child is in her home, while the father has been and will continue to be away from said child for work purposes and leaves said child in the care of his mother during his absence.

The appellee, in a counter-petition, prayed that the court enforce the custody agreement that the parties had entered into and conduct an interview with the five-year-old child to determine if he had a preference as to whether he desired to attend pre-school in 1996 near the residence of the father or the residence of the mother.

While the matter was pending, the psychologist appointed to monitor the progress of the child, informed the court on May 20, 1996, that the child had not stated a preference as to where he wanted to attend school. The psychologist also stated that the child

did not want to make a choice, that he was not able to make an objective or competent choice, and that he could be easily swayed by whichever parent with whom he had just been. The psychologist further said that it would be unwise to ask the child to make a choice.

Subsequently, the trial judge, after hearing the representations and arguments of the parties, announced that he would attempt to interview the child on two occasions, once, on that day, June 21, 1996, after the child had been in the appellant's physical custody for a week, and once on July 19, 1996, after the child had been in the appellee's physical custody for a week. On the first occasion, the Court attempted to interview the child, but the child refused to respond. On July 19, 1996, the child indicated that he wanted to live with his "dad."

After conducting an evidentiary hearing on August 28, 1996, the court ruled that the appellee should have physical custody of the child and that the child should attend pre-school near the appellee's home. In reaching this conclusion, the court stated:

> The Court is of the opinion and conclusion in this instance that the child should for the current school year be placed in the custody of the father.

> I say this because the child has been reared, he's been brought up and has spent more time at the home of the father. That's been the home that he's lived in all of his life except for the past—I guess for the past several months, but he's lived all his life basically in that house; there's been a joint custody arrangement.

> That has to come to an end. It has to be concluded, because he has to start to school. There's not any showing it would be detrimental for him to remain there. He certainly would have attachments to the place where he has lived, and the Court is of the opinion and finds that he's spent more of his life where he started off than he has spent at the mother's present residence.

> The fact that the mother comes to the Court and says that I can stop working

and will do so does not warrant, in the opinion of the Court, removing the child.

\*   \*   \*

> The Court is of the opinion that there's no showing for a change of custody. The Court finds that the primary caretaker rule would not apply in this instance because the child has been subject to a split custody at least since June of '94.

> Since that time, the Court is of the opinion, that the child has probably spent more time with the plaintiff father than the defendant mother.

> The Court is of the opinion, considering the fact that the child has lived the greater portion of his life and is more familiar with and is living in the house of the plaintiff father.

> The Court will award custody to the plaintiff for this current school year.

Subsequently, the court entered an order implementing this decision.

As previously indicated, on appeal, the appellant claims that the court erred in awarding the appellee custody of the parties' child upon the basis of the interviews with the child when the court-appointed psychologist had indicated that the child was not competent to make a choice and when the court did not conduct the interview in a proper manner. The appellant also claims that the court erred in not deciding the custody question based upon the child's best interests and that the court erred in placing the "burden of proof upon her to show why the agreed order should be modified when the agreed order stated that the custody order should be based on the child's best interest if the child was found to be incompetent to express a custodial preference."

## STANDARD OF REVIEW

█ This Court recognized in Syllabus Point 1 of *Judith R. v. Hey*, 185 W.Va. 117, 405 S.E.2d 447 (1990) that " 'To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child.' Syl. Pt. 2, *Cloud v. Cloud*, 161 W.Va. 45, 239

S.E.2d 669(1977)." *See also, Stevens v. Stevens,* 186 W.Va. 259, 412 S.E.2d 257 (1991).

## DISCUSSION

█ Contrary to the appellant's assertions, the record in the present case shows that the circuit judge did not render his decision on the basis of the child's stated preference to live with one parent. In fact, the judge concluded that the child's statement of preference should not control, and at the conclusion of the hearing in the case, the judge specifically stated:

> [A] child of five years would not be able to make an informed and intelligent decision as to going to school and the consequences of attending one school versus another school. A child doesn't have the capacity to do that. The Court recognizes that, and I think that the psychologist recognizes that, and I'm sure that the parties may recognize that. I'm sure these attorneys recognize that.

The record also indicates that instead of relying upon the child's expression of preference, the court found that the child had been reared in the Webster County area and had basically lived there most of his life and that after the parties' divorce, the appellant had moved to the Bridgeport area. The court concluded that if the appellant was granted custody, the child would be uprooted from the area in which he had principally lived and would be required to live in the Bridgeport area. The court said:

> In this instance, the child has been basically reared in the home area, or been basically reared where he lived as a child with both of the parties.
>
> The Court is of the opinion from this evidence that he has had more contact with that vicinity than he has had with the Bridgeport area.

The court also stated:

> My impression is that the change of circumstances that will warrant a change in custody are changes that are material that promote the best interest of the child is what I thought the rule was.

In this instance, there has certainly been a change in circumstances in regard to the mother.

I cannot say from the evidence that the best interest of this child would be materially promoted by placing him at Bridgeport.

█ This Court believes that the circuit judge properly concluded that a five-year-old child, such as the child in this case, cannot meaningfully express a preference as to which parent he wishes to reside and that the circuit court properly based its ruling on what was in the best interests of the child. Before a statement of preference by a child may properly serve as the basis for establishing or modifying custody, the child must be of sufficient age and maturity. *Rose v. Rose,* 176 W.Va. 18, 340 S.E.2d 176 (1985); and *Garska v. McCoy,* 167 W.Va. 59, 278 S.E.2d 357 (1981). This Court does not believe that a five-year-old child, such as the one in this case, would ever have sufficient maturity to grasp the significance of a statement of preference. Syllabus Point 2 of *Cloud v. Cloud, supra,* states the fundamental duty of a court in considering the question of whether child custody should be modified. That duty is to consider whether a change in custody will materially promote the welfare of the child. Parents may not modify that duty by entering into any sort of agreement in abrogation of that duty, nor may a trial judge avoid that duty by relying upon an agreement such as the one involved in this case. Such agreements place undue pressure upon the infants involved and should be looked upon with disfavor. What is in the best interest of the child should always be the primary inquiry.

Since the record shows that the trial judge did not base his ruling on the expression of preference by the parties' child, this Court cannot conclude that the appellant's assertion that the Court erred in basing the decision on such preference has merit. Likewise, the Court concludes that the claim that the circuit court did not conduct the interviews in a proper manner does not support a reversal of the circuit court's decision.

It does appear that the circuit court considered whether there had been a change in circumstances of the parties and whether a

change in custody would materially promote the welfare of the child and the court articulated valid reasons for directing that the child attend pre-school in Webster County. This shows that the trial court considered the factors set forth in *Cloud v. Cloud, supra,* in arriving at the decision in this case. Because of this, this Court believes that the judgment of the Circuit Court of Webster County should be affirmed.

The judgment of the Circuit Court of Webster County is, therefore, affirmed.

Affirmed.

Justice McGRAW did not participate in the decision of this case.