557 S.E.2d 303

**Lee BOWMAN and Nancy Bowman, Petitioners below, Appellees,**

v.

**Buford BLEVINS, Sr., Respondent below, Appellant.**

**No. 29096.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2001.

Decided Nov. 28, 2001.

Ronald Keith Flinchum, Esq., Welch, for Appellees.

Harold B. Wolfe, III, Esq., Princeton, for Appellant.

PER CURIAM.

In this case we affirm the decision of a family law master and circuit judge in their determination that two grandchildren may choose to live with their grandparents.

### I.

The appellant, a former West Virginia resident, is the father of two children who were born in West Virginia; a daughter born June 20, 1983, and a son born May 13, 1985. After the children's mother died in 1986, the children moved to North Carolina with the appellant. About 5 years ago, both children came to live in McDowell County, West Virginia with their maternal grandparents, who are the appellees in the instant action. The older child has lived with the appellees since then, attending high school here. The younger child moved back to North Carolina to live with the appellant in 1998. While relations between the appellees and the appellant may have been strained at times, it appears that the children have enjoyed support from both the appellant and the appellees, and have visited extensively in both directions.

The instant case began when the appellees filed a petition seeking a child custody order in the Circuit Court of McDowell County. The filing of the petition was triggered by the appellant telling the older child that she must leave the appellees' home and return to North Carolina with her younger sibling, who was visiting the appellees at the time.

The petition asserted, *inter alia,* that both children strongly wanted to reside with the appellees.

After a hearing on the petition, a family law master issued an order awarding custody of the two children to the appellees. This order was approved by the circuit judge, and the instant appeal followed. The family law master's decision was based primarily on the children's clear and reasoned expression of their preference to live with the appellees. The law master met with the children individually and away from the parties; the interview was tape recorded and we have reviewed the tape.

## II.

 The appellant asserts that the family law master did not have jurisdiction to entertain the appellees' petition. However, we recognized the jurisdiction of a court to entertain such a petition in the case of *Overfield v. Collins*, 199 W.Va. 27, 483 S.E.2d 27 (1996). Syllabus Point 1 of *Overfield* states:

Any attempt by a non-parent to judicially change the care and custody of a child from a natural parent must precede that attempt with: (1) the filing of a petition setting forth all of the reasons why the change of custody is required; and (2) the service of that petition, together with a reasonable notice as to the time and place that petition will be heard. Following the filing and service of the petition and notice of hearing upon that petition, the natural parents whose rights are being affected shall have the right to: (1) present evidence as to the reasons why custody should not be changed; and (2) obtain a decision from a neutral, detached person or tribunal.

The appellees followed the procedure described in *Overfield*.

 The appellant also asserts that the family law master improperly decided the merits of the appellees' petition by elevating the children's stated preferences over the appellees' "right" to the children's custody as their sole surviving natural parent.

We stated in *Rose v. Rose*, 176 W.Va. 18, 340 S.E.2d 176 (1986) that:

... [i]t is well established that in controversies relating to the custody and care of children, the child, if he or she is of the age of discretion, should be consulted and due weight should be given to his or her wishes in the matter of custody and care.... This does not mean that the child's decision is binding on the trial court or that the parties are forbidden to introduce evidence to rebut the child's testimony.... an inquiry should be made into the child's intelligence and maturity to see if the child's choice was intelligently made. Equally important, however, is the child's rationale for his decision. In order to be accorded weight, a child's preference ... ought to be based on good reason.... In making its examination of the child, the trial court should try to explore several aspects of the child's decision. We offer the following guidelines to the trial court as to areas which may have an effect on the weight placed on the child's decision: 1. The trial court should give greater weight to the wishes of a child which are expressed with strength, clearness, or with great sincerity. 2. A child's preference should be given less weight where it appears that the preference is based on a desire for less rigid discipline or restraint. 3. The trial court should investigate whether the statement of preference by the child was induced by the party in whose favor the preference was expressed. If so, said statement of preference should be accorded little, if any, weight. 4. Where an otherwise intelligent child makes an illogical decision based on unimportant factors, the trial court may disregard the child's statement of preference.

*Id.* at 20–21 n. 2–4, 340 S.E.2d at 179–80 n. 2–4.

In the instant case, the children, ages 15 and 17, were over 14, the "age of discretion." Although the appellant states in his brief that he unsuccessfully tried to obtain a copy of the tape recording of the hearing before the family law master, including the law master's interview with the children, we were able to obtain a copy of the tape without difficulty. Upon review of that tape recording, we conclude that the methodology prescribed in *Rose* was carefully followed. The law master inquired thoroughly and the record establishes that the children's preferences were

firmly and reasonably held, that they were not under any undue influence, that the grandparents' home was a fit place, and that the children have strong ties there.[1]

### III.

We find no error and affirm the decision of the lower court.

Affirmed.

1. The record shows that the appellant has worked hard to provide support for his children. The fact that the children expressed a preference to live with their maternal grandparents should not be allowed by any of the parties to permanently injure the children's relationship with their father.