TINA M. KUMKE, APPELLANT, V.
MARK D. KUMKE, APPELLEE.

648 N.W.2d 797

Filed July 30, 2002.   No. A-01-1028.

L. William Kelly, of Kelly & Schroeder, for appellant.

Justin J. Cook, of Langvardt & Valle, P.C., for appellee.

HANNON, SIEVERS, and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

Mark D. Kumke filed an application in the district court for Clay County, Nebraska, seeking to modify the decree entered in the previous dissolution proceedings involving Mark and Tina M. Kumke. Mark requested the court to change the award of custody of the parties' children from Tina to himself. The district court found that a material change in circumstance had occurred since the entry of the decree of dissolution and granted Mark's request for a change of custody. Tina appeals from the district court's order denying her motion for new trial. For the following reasons, we reverse, and remand for further proceedings.

## BACKGROUND

The parties were married on February 16, 1991, in Blue Hill, Nebraska, and divorced on March 21, 1997. Two children were born during the marriage: Brock, born January 4, 1993, and Kaitlin, born February 17, 1994. In the decree dissolving the parties' marriage, the district court approved the parties' settlement agreement; determined that both parties were fit and suitable persons to have the care, custody, and control of the minor children; and awarded Tina custody, subject to Mark's reasonable rights of visitation. Child support was also established pursuant to the decree.

Mark initially filed an application to modify decree of dissolution on July 18, 1997; however, this application was apparently dismissed by Mark. Mark then apparently filed the instant application to modify custody sometime in the year 2000. While this application is not contained in the transcript before us on appeal, the district court's order ruling on the instant application stated that Mark alleged (1) that Tina had entered into a course of conduct of attempting to "poison the minor children's minds" against Mark, (2) that Tina had demonstrated an unstable lifestyle, and

(3) that because Tina's residence was being foreclosed, she would be without a residence.

Although Tina was represented by counsel at the time of the parties' divorce, her counsel was subsequently allowed to withdraw, and Tina appeared pro se at the June 18, 2001, hearing on Mark's application. Mark was present with his counsel. At the start of the hearing, Tina orally requested a continuance, wherein she indicated that she had undergone back surgery in April, that she had since suffered complications, and that she had a letter from her doctor. The letter was apparently filed with the court on the Friday prior to the Monday hearing. The medical reason identified for Tina's request was that her doctor had indicated that it would not be good for her to sit for prolonged periods. The court did not formally deny Tina's motion for continuance, but, rather, granted Tina permission to stand at the counsel table and gave Tina the opportunity to contact any additional witnesses that she might wish to have present at the hearing. Tina does not raise as error the district court's failure to grant her request for a continuance.

The evidence adduced at the hearing showed that the parties separated in late 1995, before their divorce in March 1997. At the time of their separation, Tina moved from Blue Hill to Deweese, Nebraska. Tina and the children lived in Deweese until July 2000, at which time they moved to Wolbach, Nebraska. The impetus for the move from Deweese to Wolbach was Tina's decision to move in with her boyfriend, who lived in Wolbach. Wolbach is roughly 90 miles north of Blue Hill. Mark continues to live in the family home in Blue Hill, where he has lived since the parties' separation. There was no evidence that Tina was ever without a place to live.

Since the parties' divorce, Tina has had two live-in boyfriends, including her living situation at the time of the hearing. There was evidence that the first live-in boyfriend used drugs and alcohol. Although Mark was "seeing" someone at the time of the hearing, she did not live with him.

Both parties were employed at the time of the hearing. Mark had been employed by the city of Blue Hill as the utilities foreman since 1989. Tina had several jobs following the parties' divorce, but at the time of the hearing, she was employed at the

Howard County Hospital in St. Paul, Nebraska, and was attending courses to receive a "surgical degree," allowing her to "further [her] job and work in the operating department." Tina was off work at the time of the hearing due to various complications following surgery for a herniated disk. She anticipated returning to work after a checkup in July unless her condition worsened.

There was testimony that the children, ages 8 and 7 at the time of the hearing, had made allegations of sexual and physical abuse by Mark. Evidence was also presented concerning Mark's drinking habits which caused Tina and the children concern. With respect to these issues, Tina sought the services of Dr. John Meidlinger, a clinical psychologist. Meidlinger concluded, after interviewing the children, that there was no evidence that the children were being abused either physically or sexually by Mark. In Meidlinger's deposition, which was admitted into evidence at the hearing, he testified that Tina related many and varied complaints to him, many of which he found to be preposterous. Meidlinger further testified that despite the fact that many of the complaints were preposterous, Tina did not question them. Meidlinger concluded that Tina's purpose for bringing the children to him was part of an agenda Tina had to stop visitations with Mark. Meidlinger also concluded that Tina was interfering in a destructive way with the children's relationship with Mark.

As to Tina's complaints with respect to Mark's drinking too much and drinking while driving with the children, Meidlinger indicated that these complaints were borne out by his interviews with the children. When confronted by Meidlinger about the drinking concerns, Mark admitted to drinking and driving with the children present. The district court received exhibit 3 with respect to the issue of Mark's alcohol use. Exhibit 3 is an alcohol evaluation report of Mark which indicates a significant history of alcohol use. The "diagnostic impression" identified in the report was "[a]lcohol [a]buse," which was in "sustained partial remission." The report indicated that Mark had "definitely abused alcohol in the past," but that he "apparently ha[d] successfully moderated his use."

At the close of evidence, the court, Mark's counsel, and Tina discussed the issue of whether the court should interview the

children. A pretrial motion to that effect had not been filed, but Tina expressed her interest in having "someone else" speak to the children. The court also expressed its interest in talking to the children in light of the evidence that had been presented at the hearing and granted Tina's "motion," although it had not been timely made. The court then outlined various ways that such an interview might take place and discussed the possibilities with Mark's counsel and Tina. The parties indicated their mutual preference for an in camera interview without the presence of counsel or either party. Mark's counsel, however, argued that any record of the interview should be sealed so that what the children said to the court could not be later misused by the parties in any way with respect to their children. In response to this concern, the court proposed that the interview be conducted without a record being made so as to avoid any need to seal the record. Upon the court's specific inquiry, both Mark's counsel and Tina responded that they had no problem with the interview's being conducted by the court without a record. The trial judge's docket notes contained in the transcript indicate that the scheduled interview of the children took place on June 21, 2001.

In its order filed July 16, 2001, the district court granted Mark's application and awarded the care, custody, and control of the minor children to Mark. In so ruling, the district court noted that Neb. Rev. Stat. § 42-364 (Reissue 1998) indicates that "[c]ustody and time spent with each parent shall be determined on the basis of the best interests of the minor child with the objective of maintaining the ongoing involvement of both parents in the minor child's life." The court reasoned, based on § 42-364, that what is in the children's best interests is, in part, a determination of which parent would most likely encourage a relationship with the noncustodial parent. The court found that visitation problems in the present case had existed since shortly after the decree of dissolution was entered. The court further found that Tina had, on occasion, frustrated or attempted to frustrate Mark's right to visit and have a relationship with the parties' children. The district court concluded that a material change in circumstance had occurred, granted Mark's application, and awarded Mark the care, custody, and control of the parties' children. The

court also granted Tina visitation rights and ordered Tina to pay child support.

Tina filed a timely motion for new trial, alleging that the district court's decision was contrary to the law and the evidence and that the court erred as a matter of law in determining that it was in the children's best interests for custody to be changed from her to Mark. Tina also alleged that the district court abused its discretion in not sustaining her motion for a continuance because she had been physically unable to properly represent herself at the hearing on Mark's application due to her recent back surgery. Finally, Tina alleged that there had been newly discovered evidence with regard to the truthfulness or lack thereof in the statements given by the parties' minor children to the court during the in camera hearing and to Meidlinger. Tina asserted that the newly discovered evidence would show that the minor children were coerced by Mark to give false information to the court and to Meidlinger.

Following a hearing, the district court entered an order denying Tina's motion for new trial. Tina subsequently perfected her appeal to this court.

## ASSIGNMENTS OF ERROR

Tina asserts, reordered, that the district court erred (1) as a matter of law in interviewing the parties' minor children in an in camera hearing without making a record of the interview and (2) in finding that there had been a material change in circumstances since the entry of the original decree of dissolution and thereby awarding Mark custody of the parties' minor children.

## STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Gruber v. Gruber*, 261 Neb. 914, 626 N.W.2d 582 (2001). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002).

## ANALYSIS

*In Camera Interview.*

Tina first asserts that the district court erred as a matter of law in interviewing the parties' minor children in an in camera hearing without making a record of the interview. Generally, where the parties have given consent or acquiescence to private interviews with the children and the court conducts an in camera hearing, such consent waives any objections which might be raised on appeal. *Capaldi v. Capaldi,* 235 Neb. 892, 457 N.W.2d 821 (1990); *Marez v. Marez,* 217 Neb. 615, 350 N.W.2d 531 (1984). See, also, 24A Am. Jur. 2d *Divorce and Separation* § 965 (1998) (court's private interview with child); Annot., 99 A.L.R.2d 954 (1965) (propriety of court conducting private interview with child in determining custody).

In *Marez,* both parties filed applications to modify the original decree of dissolution, seeking permanent custody of the minor children. At the close of evidence, the court conducted an in camera interview of the children without the presence of counsel, a procedure to which the parties had previously agreed. A record of the interview was made. On appeal, the entire record revealed that the appellant and her counsel knew in advance that there would be an in camera hearing, that a record would be taken, and that the judge would ask the children questions. However, the appellant neither checked nor asked to see the record afterward and made no effort, at that time or by a motion for a new trial, to contradict what was said in the in camera interview. The Nebraska Supreme Court held that under those circumstances, any error in the trial court's procedure, which question it did not decide, had been waived. The court referenced 24A Am. Jur. 2d, *supra* (at that time 24 Am. Jur. 2d *Divorce and Separation* § 985 (1983)), and Annot., 99 A.L.R.2d, *supra,* and held that "[t]here appears to be uniformity in the opinions of courts which have considered the issue, that where the parties have given consent or acquiescence to such interview and the court conducts an in camera hearing, such consent waives any objections which might be raised on appeal." *Marez,* 217 Neb. at 621-22, 350 N.W.2d at 535. The *Marez* opinion does not indicate the exact nature of the appellant's objection on appeal to the in camera interview.

In *Capaldi*, a decree of dissolution was modified, changing custody of the children from the mother to the father. On appeal, the mother complained that the children had been questioned in camera by the trial court without being sworn as witnesses. The appellate opinion does not specifically state that a record was made of the in camera hearing, but does indicate that the attorney for each party, the guardian ad litem, and the judge all participated in the questioning of the children. The trial record did not reflect any objection by the appellant to that procedure at the trial. The *Capaldi* court cited the holding from *Marez* and concluded that the mother's assignment of error was without merit.

In the present case, like the appellants in *Marez* and *Capaldi*, Tina agreed to the procedure used by the trial court in interviewing the children. At the hearing on Mark's application, Tina requested that the court conduct an in camera interview of the children and agreed that such interview should be conducted without the presence of counsel or either party. Tina did not object and specifically agreed to the court's suggestion that it conduct the interview without making a record.

The Nebraska Supreme Court has stated with regard to the in camera interviewing of children:

> "Given our de novo review, such a practice is of questionable value unless an adequate record is made. Moreover, the young and impressionable age of the children [ages 8 and 7] would entitle any expression as to their preferred living arrangements to little, if any, weight. In the final analysis, no court can abdicate its obligation to determine what it deems to be in the best interests of the children, based upon the totality of the circumstances."

*Beran v. Beran*, 234 Neb. 296, 301-02, 450 N.W.2d 688, 692 (1990) (quoting *Krohn v. Krohn*, 217 Neb. 158, 347 N.W.2d 869 (1984)).

We also note Neb. Ct. R. of Prac. 5A(1) (rev. 2000), which provides: "The official court reporter shall in all instances make a verbatim record of the evidence offered at trial or other evidentiary proceeding, including but not limited to objections to any evidence and rulings thereon, oral motions, and stipulations by the parties. This record may not be waived."

Rule 5 was amended on February 1, 1995, by adding the language currently contained in rule 5A(1) and (2). See *Gerdes v. Klindt's, Inc.*, 247 Neb. 138, 141, 525 N.W.2d 219, 221 (1995) (holding that "[h]enceforth, all evidentiary proceedings shall require the presence of a court reporter who shall make a verbatim record of the proceedings, and such recording may not be waived by the court or the parties"). We agree with Tina's assertion that the district court in the present case should have made a record of the in camera hearing with the parties' children. Accordingly, we reverse, and remand for a new evidentiary hearing. See, *Coates v. First Mid-American Fin. Co.*, 263 Neb. 619, 641 N.W.2d 398 (2002); *Gerdes v. Klindt's, Inc., supra.*

*Modification of Custody.*

Tina next asserts that the district court erred in finding that there had been a material change in circumstances since the entry of the original decree of dissolution and thereby awarding Mark custody of the parties' minor children. However, Tina does not argue this assigned error in her brief. Errors that are assigned but not argued will not be addressed by an appellate court. *Caruso v. Parkos*, 262 Neb. 961, 637 N.W.2d 351 (2002). Given our conclusion above, we need not consider this assignment of error further.

## CONCLUSION

We conclude that the district court erred in not making a record of the in camera hearing with the parties' children, and accordingly, we reverse, and remand for a new evidentiary hearing. Given that result, we need not consider Tina's second assignment of error further.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.