2010 OK 29

**Noah Shawn YNCLAN, Petitioner,**

v.

**The Honorable Paul K. WOODWARD, Special District Judge, Respondent.**

No. 107,478.

Supreme Court of Oklahoma.

March 23, 2010.

As Corrected March 25, 2010.

146

William B. Maxwell, Enid, OK, for Petitioner.

Michael D. Roberts, Enid, OK, for Respondent.

KAUGER, J.:

¶1 This is a case of first impression. We have never determined under what circumstances and conditions a trial court may: 1) conduct *in camera*[1] interviews of children who are the subject of child custody and/or visitation proceedings;[2] and 2) provide the transcript of the proceedings to the parents after the private *in camera* interview occurs. Consequently, we assume original jurisdiction to address these questions, and to delineate the guidelines for trial courts to follow when conducting an *in camera* interview of children in custody/visitation matters. We also hold that unless one party or both parties appeal the custody determination, due process does not require that either parent have access to the transcript of the *in camera* interview of the children merely to satisfy their own curiosity. Oklahoma Supreme Court Rule 1.33, 12 O.S.2001 Ch. 1, App. 1, is amended to conform with today's holding.

## FACTS

¶2 Because the matter is presented as a request to assume original jurisdiction and to issue a writ of mandamus, the facts in the record are relatively sparse. It appears that Nancy Ynclan (the mother) and Nolan Shawn Ynclan (the petitioner/father) were married on Valentine's Day 1996. The couple had four children born in 1996, 1997, 1999, and 2004, and on February 27, 2008, the mother filed for divorce from the father in Garfield County District Court.

¶3 The matter proceeded to trial on January 14 and January 30, 2009. On the second day of trial, the trial judge interviewed the three oldest children, in chambers, without counsel or the parents being present. However, a court reporter was present to take notes. The three interviews lasted less than fifteen minutes. The mother insists that counsel for both sides agreed not to be present in the interview, but that written questions were submitted. According to the father, after the interview, he promptly made an informal request for the transcript of the children's interviews and tendered his cost

---

1. An *in camera* interview is generally an "in chambers" interview which is essentially an approved *ex-parte* communication because it is a communication that involves fewer than all of the parties who would ordinarily be legally entitled to be present during the discussion. See *N.D. v. R.J.H.*, 979 A.2d 1195, 1200, fn. 4 (D.C. 2009).

2. Apparently, at some point, the mother had made allegations that the father may have mistreated the children. While this allegation may be been raised, no one relies on the allegation in this matter, nor do we know what effect, if any, the allegation had on the trial court's decision or questioning of the children. While some of the same procedures may or may not be helpful in other contexts such as negligence proceedings, termination of parental rights cases, or when allegations of sexual abuse are present, our decision today is expressly limited to a child's preference in child custody and/or visitation matters.

deposit. This request was denied and at the conclusion of the trial, the court granted the divorce and awarded the mother custody of the children.

¶ 4 On February 13, 2009, the father made a formal request to the court to review the transcript of the children's testimony. The court held a hearing on March 2, 2009, and denied the father's request for the transcript. The divorce decree was filed on April 6, 2009. According to the mother, the trial court indicated that the transcript could be made available for purposes of appeal, but the father did not appeal from the divorce decree. On August 27, 2009, the trial court filed a written order reflecting its decision on March 2, 2009, denying the father review of the transcript. On August 28, 2009, the father filed an application and brief for mandamus in this Court, seeking an order which would direct the trial court to allow him access to the transcript. (No transcript has been made available to this Court for review.)

¶ 5 We assume original jurisdiction to delineate the proper procedure for a trial court to follow when considering an *in camera* interview in the context of child custody and/or visitation disputes. Under the facts presented, we also deny the writ of mandamus.

3. The full text of 20 O.S. Supp.2007 § 106.4 provides:

A. The court reporter shall make a full reporting by means of stenographic hand, stenomask or machine notes, or a combination thereof, of all proceedings, including the statements of counsel and the court and the evidence, in trials and other judicial proceedings to which the court reporter is assigned by the appointing judge unless excused by the judge who is trying the case with the consent of the parties to the action. Nothing herein contained shall be construed to authorize the certification of persons as certified shorthand reporters who rely exclusively upon the stenomask for reporting judicial proceedings, except as provided by law. A refusal of the court to permit or to require any statement to be taken down by the court reporter or transcribed after being taken down, upon the same being shown by affidavit or other direct and competent evidence, to the Supreme Court, or other appellate court, shall constitute a denial of due process of law. The court reporter may use an electronic instrument as a supplementary device. In any trial, hearing or proceedings, the judge before whom the matter is being heard

## I.

## GUIDELINES FOR CONDUCTING *IN CAMERA* INTERVIEWS IN CHILD CUSTODY/VISITATION DISPUTES PURSUANT TO 43 O.S. Supp.2002 § 113.

¶ 6 The father argues that 20 O.S. Supp. 2007 § 106.4(A) and 43 O.S. Supp.2002 § 113(C), taken collectively, require that *in camera* interviews of children in custody proceedings be transcribed and that the statutes also require the trial court to allow the parents to review such transcripts. In other words, he alleges that the transcripts may not be sealed from either the parties or their attorneys.

¶ 7 Title 20 O.S. Supp.2007 § 106.4(A), governs the duties of court reporters and it provides in pertinent part:

... A refusal of the court to permit or to require any statement to be taken down by the court reporter or transcribed after being taken down, upon the same being shown by affidavit or other direct and competent evidence, to the Supreme Court, or other appellate court, shall constitute a denial of due process of law.... [3]

may, unless objection is made by a party or counsel, order the proceedings electronically recorded. A trial or proceedings may proceed without the necessity of a court reporter being present, unless there is objection by a party or counsel. Provided that if an official transcript is ordered then it shall be prepared by the official court reporter.
B. Upon request of either party in a civil or criminal case, the reporter shall transcribe the proceedings in a trial or other judicial proceeding, or so much thereof as may be requested by the party, certify to the correctness of the transcript, and deliver the same in accordance with the rules of the Supreme Court. The fee for an original transcript shall be Three Dollars and fifty cents ($3.50) per page. Two copies of the original transcript shall be furnished without additional charge. Each page shall be at least twenty-five lines to the page and typed no fewer than nine characters to the typed inch. Each page shall be no more than double spaced and the margin on the left side of the page shall be no more than one and one-half (1 1/2) inches and the margin on the right side of the page shall be no more than one-half (1/2) inch from the edge of the paper. The format for all transcripts shall be prescribed by

We have held that when the trial court denies a timely request for reporting the statements of counsel and the court in a judicial proceeding, due process is denied.[4] We have also indicated that the right to complain of this type of denial of due process may be waived.[5] However, we have not addressed the application of this statute in the context of parental access to *in camera* transcripts.

¶ 8 Title 43 O.S. Supp.2002 § 113(C), governs a trial court's ability to consider the preference of children in custody and/or visitation disputes, and it provides in pertinent part:

... C. If the child expresses a preference or gives testimony, such preference or testimony may be taken by the court in chambers without the parents or other parties present. If attorneys are not allowed to be present, the court shall state, for the record, the reasons for their exclusion. At the request of either party, a record shall be made of any such proceeding in chambers....[6]

[1] ¶ 9 The mother does not address § 106.4, but, instead, argues that the father is attempting to add requirements into § 113 which do not exist. She also contends that we should not assume original jurisdiction in this cause because the father could have appealed the final divorce decree and raised the issue of his denial of access to transcript at that time. Neither party addresses the applicability, if any, of Oklahoma Supreme Court Rule 1.33(e), 12 O.S.2001 Ch. 15, App.

---

the Supreme Court. The fees for making the transcript shall be paid in the first instance by the party requesting the transcript and shall be taxed as costs in the suit.

When the judge on his or her own motion orders a transcript of the reporter's notes, the judge may direct the payment of charges and the taxation of the charges as costs in such manner as the court deems appropriate. In a criminal action, if the defendant shall present to the judge an affidavit that the defendant intends in good faith to take an appeal in the case and that a transcript of the reporter's notes is necessary to enable the defendant to prosecute the appeal, and that he or she has not the means to pay for the transcript, the court, upon finding that there is reasonable basis for the averment, shall order the transcript made at the expense of the district court fund. The format preparation, delivery and filing of transcripts to be used in civil and criminal appeals may be regulated by the Supreme Court.

C. The court reporter shall file his or her records of the evidence and the proceedings taken in any case with the clerk of the court in which the case was tried.

D. To the extent that it does not substantially interfere with the court reporter's other official duties, the judge by whom a reporter is employed or to whom he or she is assigned may assign a reporter to secretarial or clerical duties arising out of official court operations.

4. *Funnell v. Cannon*, 1978 OK 166, ¶ 8, 577 P.2d 1287. See also *Cherry v. Brown*, 1920 OK 251, ¶ 0, 79 Okla. 215, 192 P. 227; *Dabney v. Hathaway*, 1915 OK 672, ¶ 21, 51 Okla. 658, 152 P. 77.

5. See *Weeks v. Wedgewood Village, Inc.*, 1976 OK 72, ¶ 10, 554 P.2d 780. The Court of Civil Appeals, though not binding on this Court, has also noted this waiver as well in *Nero v. Nero*, 2002 OK CIV APP 64, ¶ 1, 48 P.3d 127.

6. The full text of 43 O.S.2001 § 113 provides:

A. In any action or proceeding in which a court must determine custody or limits of or period of visitation, the child may express a preference as to which of its parents the child wishes to have custody.

B. 1. The court shall determine whether the best interest of the child will be served by the child's expression of preference as to which parent should have custody or limits of or period of visitation rights of either parent. If the court so finds, the child may express such preference or give other testimony.

2. If the child is of a sufficient age to form an intelligent preference, the court shall consider the expression of preference or other testimony of the child in determining custody or limits of or period of visitation. The court shall not be bound by the child's choice and may take other facts into consideration in awarding custody or limits of or period of visitation. However, if the child is of a sufficient age to form an intelligent preference and the court does not follow the expression of preference of the child as to custody, or limits of visitation, the court shall make specific findings of fact supporting such action if requested by either party.

3. There shall be a rebuttable presumption that a child who is twelve (12) years of age or older is of a sufficient age to form an intelligent preference.

C. If the child expresses a preference or gives testimony, such preference or testimony may be taken by the court in chambers without the parents or other parties present. If attorneys are not allowed to be present, the court shall state, for the record, the reasons for their exclusion. At the request of either party, a record shall be made of any such proceeding in chambers.

1, which governs the access to transcripts on appeal. It provides:

(e) Access to the Record by Parties or Counsel.

Until a uniform rule of procedure has been promulgated by this court, the parties shall have access to the transcript and to the bound instruments on file in the trial court on such terms as that court may impose.[7]

¶10 Neither the statutes nor the rule expressly require the father to be provided with a transcript. We recognize that the mother is correct that the father could have appealed the divorce decree and raised his denial of access to the transcript argument. Nevertheless, because this issue is a matter of public interest, at least to the extent that it could potentially be raised in every divorce case in which custody or visitation of children is disputed, we assume original jurisdiction and address the procedure for conducting such interviews and whether, or in what circumstances, a parent should be entitled to access to such transcripts after the interview. Because the issue is a common occurrence in our courts, we have conducted an extensive review of sister states for guidance in constructing this procedure.

¶11 The procedure of a trial judge conducting a private, *in camera* interview with a child, depending upon age and maturity, has been widely used as a means of discovering the child's custodial preference.[8] The purposes of conducting an interview in private, rather than in open court in the presence of the parents include:

1) elimination of the harm a child might suffer from exposure to examination and cross-examination and the adversarial nature of the proceedings generally; [9]

2) reduction of added pressure to a child to an already stressful situation; [10]

7. We need not recite the full text of Oklahoma Supreme Court Rule 1.33, 12 O.S.2001 Ch. 15, App. 1, herein, but we note that it involves the form and content of records on appeal and also governs various duties of the court clerk, court reporter, and trial court in assembling a record on appeal.

8. As early as 1932, Oklahoma began considering the child's custodial preference. *Garlin v. Garlin,* 1932 OK 52, ¶0, 154 Okla. 230, 7 P.2d 463. Oklahoma's statute, 43 O.S. Supp.2002 § 113, see note 6, supra, was first enacted in 1975 as 12 O.S. Supp.1975 § 1277.1. Although it did not specifically address private, *in camera* interviews, it did allow the trial court to consider a child's preference in custody disputes as one factor in considering custody. Certainly by 1975, many courts recognized the universal acceptance of conducting private interviews with children in custody proceedings. See generally S. Bernstein, Annotation, *Propriety of Court Conducting Private Interview with Child in Determining Custody,* 99 A.L.R.2d 954 (1965). See *Jackson v. Smith,* 250 Ark. 923, 467 S.W.2d 704, 705 (1971); *Conkling v. Conkling,* 185 N.W.2d 777, 785 (Iowa 1971); *Winkler v. Winkler,* 252 Ind. 136, 246 N.E.2d 375, 376 (1969); *duPont v. duPont,* 59 Del. 206, 216 A.2d 674, 681–82 (1966); *Lawson v. Lawson,* 87 Idaho 444, 394 P.2d 1008, 1010 (1964); *Seelandt v. Seelandt,* 24 Wis.2d 73, 128 N.W.2d 66, 67–68 (1964); *Franks v. Franks,* 163 Ind.App. 346, 323 N.E.2d 678, 681 (1975); *Gonyea v. Gonyea,* 232 Or. 367, 375 P.2d 808, 811 (1962); *Correll v. Newman,* 236 Miss. 545, 111 So.2d 643, 645 (1959); *Bowler v. Bowler,* 351 Mich. 398, 88 N.W.2d 505, 509 (1958); *Johnson v. Johnson,* 7 Utah 2d 263, 323 P.2d 16,

17–18 (1958); *Douglas v. Sheffner,* 79 Wyo. 172, 331 P.2d 840, 845 (Wyo.1958), *superseded on other grounds* by *In re Interest of MKM,* 792 P.2d 1369 (Wyo.1990); *Nelson v. Nelson,* 43 Wash.2d 278, 260 P.2d 886, 887 (1953); *Callen v. Gill,* 7 N.J. 312, 319, 81 A.2d 495 (1951); *In re Marriage of Arnbeck,* 33 Colo.App. 260, 518 P.2d 300, 301 (1974); *Kitchens v. Kitchens,* 305 So.2d 249, 250 (D.C.Fla. 3rd 1974); *Brown v. Brown,* 510 S.W.2d 14, 16 (Ky.Ct.App.1974); *Lincoln v. Lincoln,* 24 N.Y.2d 270, 247 N.E.2d 659, 299 N.Y.S.2d 842, 845 (1969); *Stickler v. Stickler,* 57 Ill.App.2d 286, 206 N.E.2d 720, 723 (1965); *Oakes v. Oakes,* 45 Ill.App.2d 387, 195 N.E.2d 840, 844 (1964); *Baker v. Vidal,* 363 S.W.2d 158, 159 (Tx.Civ.App.1962); *Wilhelm v. Wilhelm,* 214 Md. 80, 133 A.2d 423 (1957); *Jenkins v. Jenkins,* 125 Cal.App.2d 109, 269 P.2d 908, 910–11 (Cal.App.1954); *Hicks v. Hicks,* 26 Tenn.App. 641, 176 S.W.2d 371, 377 (1943).

9. *In re Marriage of Knoche,* 322 Ill.App.3d 297, 304, 255 Ill.Dec. 716, 750 N.E.2d 297 (2001). To spare the child the agony inherent in the break up of the family unit by subjecting the child to testify in open court and be cross-examined as if the child were a witness in an ordinary criminal or civil litigation. *Burghdoff v. Burghdoff,* 66 Mich.App. 608, 239 N.W.2d 679, 682 (1976). Calling child as witness in divorce differs from any other civil or criminal proceeding because a parents' divorce is one of the most traumatic events that affects a child. *Reed v. Reed,* 189 Misc.2d 734, 734 N.Y.S.2d 806, 809 (2001).

10. *In re Marriage of Knoche,* see note 9, supra.

3) enhancement of the child's ability to be forthcoming; [11]

4) reduction of the child's feeling of disloyalty toward a parent [12] or to openly choose sides; [13]

5) minimization of the emotional trauma affecting the child,[14] by lessening the ordeal for the child; [15]

6) protection of the child from the tug and pull of competing custodial interests; [16] and

7) awarding custody without placing the child in an adverse position between the parents.[17]

¶ 12 Obviously, the purpose of such a hearing is not to lessen the ordeal for the parents, but, rather, to lessen the ordeal for the child. Nor is it intended to make a secret of the basis for the court's findings.[18] The preference of the child is only one of many factors to be considered when determining the child's best interest concerning custody.[19] It should never be the only basis for determining custody.[20] Nor should a child be directly asked where the child would rather live because specifically asking preference provides an opportunity for parental manipulation or intimidation of the child as well as an opportunity for the child to manipulate the parents.[21] It also gives the child

11. *In re Marriage of Knoche*, see note 9, supra. If held in open court, the child's veracity might be suspect and in many cases would be cumulative to other evidence. *In re Matter of Allen*, 33 Kan.App.2d 109, 97 P.3d 1060, 1062 (2004).

12. *In re Marriage of Hefer*, 282 Ill.App.3d 73, 217 Ill.Dec. 701, 667 N.E.2d 1094 (1996).

13. *Lesauskis v. Lesauskis*, 111 Mich.App. 811, 314 N.W.2d 767, 768 (1982); *Hicks v. Hicks*, see note 8, supra (saves embarrassment of child from having to testify in from of parent).

14. *Normand v. Ray*, 109 N.M. 403, 785 P.2d 743, 747–48 (1990). We note that is it never a good idea for a trial judge to give the children his or her phone number, email, or invite the child to contact them on social networking websites after an *in camera* interview is conducted in case the child wants to communicate further with the judge. See *Frengel v. Frengel*, 880 So.2d 763, 764 (Fla.App.2004)(trial judge disqualified for such conduct).

15. *Stickler v. Stickler*, see note 8, supra. Protects the child from trauma and distress of choosing between parents in open court. *Surman v. Surman*, 277 Mich.App. 287, 745 N.W.2d 802, 809 (2008); *Impullitti v. Impullitti*, 163 Mich.App. 507, 415 N.W.2d 261, 263 (1987). Interviews have even been held outside of the local courtroom in the park so as to encourage children to be at ease and more open. See *Desmond v. Desmond*, 134 Misc.2d 62, 509 N.Y.S.2d 979, 981 (1986).

16. *Normand v. Ray*, see note 14, supra.

17. *In re Marriage of Brown*, 597 N.E.2d 1297, 1300 (Ind.App.1992).

18. *Stickler v. Stickler*, see note 8, supra.

19. *Paryzek v. Paryzek* 776 P.2d 78, 81 (Utah App. 1989). *Kitchens v. Kitchens*, see note 8, supra. *Jeantete v. Jeantete*, 111 N.M. 417, 806 P.2d 66,

69 (1990). In addition to 43 O.S. Supp.2002 § 113, see note 6, supra, 43 O.S.2001 § 112.2 lists some mandatory considerations when considering custody. Oklahoma caselaw also enumerates several factors to be considered when considering the best interest of the child in determining custody. The best interests of the child must be a paramount consideration of the trial court when considering custody and visitation. *Daniel v. Daniel*, 2001 OK 117, ¶ 21, 42 P.3d 863. Many factors have been used to consider custody determinations. Some previous factors have also included: the interest the parent shows in the child [*Rice v. Rice*, 1979 OK 161, ¶ 9, 603 P.2d 1125; *Park v. Park*, 1980 OK CIV APP 19 ¶ 6, 610 P.2d 826]; stability [*Gilbert v. Gilbert*, 1969 OK 133, ¶ 6, 460 P.2d 929]; and lifestyle [*Brim v. Brim*, 1975 OK CIV APP 4, ¶ 9, 532 P.2d 1403; *Cooper v. Cooper*, 1980 OK CIV APP 12, ¶ 8, 610 P.2d 1226].

20. Title 43 O.S. Supp.2002 § 113, see note 6, supra. *Kitchens v. Kitchens*, see note 8, supra. *In re Marriage of Hefer*, see note 12, supra; *Blue v. Brooks*, 261 Ind. 338, 303 N.E.2d 269, 272 (Ind.1974); *McCauley v. McCauley*, 678 N.E.2d 1290, 1292 (Ind.App.1997); *Romi v. Hamdan*, 70 A.D.2d 934, 417 N.Y.S.2d 523, 524 (1979). Nor is the preference of the child binding on the court. *In re Marriage of Milovich*, 105 Ill.App.3d 596, 61 Ill.Dec. 456, 434 N.E.2d 811, 823 (1982); *In the Matter of Robert v. Rosemary*, 148 A.D.2d 449, 538 N.Y.S.2d 605, 607 (1989) (court erred in placing undue emphasis on *in camera* interviews).

21. *In re Custody of J.H.*, 231 Mont. 301, 752 P.2d 194, 195 (1988); *In re Marriage of Hefer*, see note 12, supra. See also *In re Marriage of Vrban*, 359 N.W.2d 420, 425 (Iowa 1984) (evident that both parents tried to manipulate the children's testimony); *Saintz v. Rinker*, 2006 Pa Super 129, 902 A.2d 509, 513 (2006) (evident that mother threatened child that if child went to live with father, mother never wanted to see child again).

the impression that their preference is "the" deciding factor for custody. Rather, the trial court should conduct such an interview so as to discern the child's preference, while at the same time, being sensitive to how the child is coping with the divorce, the pressures put on the child by the divorce and stating a preference, as well as to ascertain the motive of the child in stating a preference.[22] When the trial court determines the child's best interest will be served by considering the child's preference, whether to hold such an interview is generally within the trial court's discretion.[23]

¶ 13 Because the interview is not held in open court, in the presence of the parents, courts have also recognized that such a procedure is contrary to the basic concepts of an adversarial system.[24] For instance, in *KES v. CAT*, 2005 WY 29, ¶ 18, 107 P.3d 779 (2005), a case in which one parent objected to the child being interviewed by the trial court in private, the Supreme Court of Wyoming noted that: "the fundamental principal of Anglo–Saxon law that the decision must be based on evidence in open court lest the guaranty of due process be infringed." The flip side of the coin is that "the conviction of those trained in the social and medical sciences that the informal procedure of obtaining the infant's preference, outlook, and interest in the calm of the judge's chambers, away from the pressure of the parents, provides best for the welfare of the child and of

22. *Place v. Place*, 129 N.H. 252, 525 A.2d 704, 708 (1987). At least one court has noted that children have been motivated to state a preference by bribes from a parent such as new Reeboks, installing a basketball hoop, buying a dog, and finding an apartment with a swimming pool. See *In re Marriage of Hefer*, see note 12, supra.

23. Oklahoma's statute, 43 O.S. Supp.2002 § 113, see note 6, supra, uses the term "may" when referring to the in chamber interview and it requires that considering preference is in the child's best interest. Most courts, whether by statute or otherwise, agree that conducting such an interview is a matter of discretion for the trial court dependent upon several factors including: the age and maturity of the child or children; the circumstances of the case; whether the child's preference may have already been disclosed through other evidence; or whether there is a risk that the child would be psychologically harmed by conducting such an interview. See *In re Priscilla S.*, 1997 ME 16, ¶ 2, 689 A.2d 593 (1997); *F.G. v. W.G.*, 445 A.2d 934, 936 (Del. 1982); *Joy v. Joy*, 178 Conn. 254, 423 A.2d 895, 897 (1979); *Strain v. Strain*, 95 Idaho 904, 523 P.2d 36, 38 (1974); *Correll v. Newman*, see note 8, supra; *In re Marriage of Bolt*, 259 Mont. 54, 854 P.2d 322, 325 (1993); *Beran v. Beran*, 234 Neb. 296, 450 N.W.2d 688, 692 (1990); *Place v. Place*, see note 22, supra. *Callen v. Gill*, see note 8, supra; *Palmer v. Palmer*, 138 Vt. 412, 416 A.2d 143 (1980); *Christopher v. Christopher*, 62 Wash.2d 82, 381 P.2d 115, 118 (1963); *In re Marriage of Wanstreet*, 364 Ill.App.3d 729, 301 Ill.Dec. 706, 847 N.E.2d 716, 719–20 (2006); *In re Marriage of Slayton*, 86 Cal.App.4th 653, 659, 103 Cal.Rptr.2d 545 (2001); *In re A.R.*, 679 A.2d 470, 477 (D.C.App.1996); *In re Marriage of Turek*, 817 P.2d 615 (Co.App.1991); *Franks v. Franks*, see note 8, supra; *Kitchens v. Kitchens*, see note 8, supra; *Brown v. Brown*, see note 8, supra; *Knott v. Knott*, 418 N.W.2d 505, 509 (Minn.App.1988); *Wright v. Wright*, 279 Mich. App. 291, 761 N.W.2d 443, 452 (2008); *Normand*

*v. Ray*, see note 15, supra; *Barry v. Barry*, 169 Ohio App.3d 129, 862 N.E.2d 143, 146 (2006); *Dodge v. Dodge*, 332 S.C. 401, 505 S.E.2d 344, 352–53 (S.C.App.1998); *Dodd v. Dodd*, 737 S.W.2d 286, 291 (Tenn.App.1987); *Paryzek v. Paryzek* see note 19, supra.

In some cases, refusal or failure to interview a child of appropriate age and maturity have been held to be reversible error. *duPont v. duPont*, see note 8, supra; *Mackowski v. Mackowski*, 317 N.J.Super. 8, 721 A.2d 12, 14 (1998)(refusal to interview sixteen year old an abuse of discretion); *Stringer v. Vincent*, 161 Mich.App. 429, 411 N.W.2d 474, 477 (1987); *Donscheski v. Donscheski*, 17 Neb.App. 807, 771 N.W.2d 213, 221–22 (2009); *Bovard v. Baker*, 775 A.2d 835, 840–41 (Pa.Super.2001). It has also been held error to neglect to interview when requested to do so. *Badgett v. Badgett*, 120 Ohio App.3d 448, 698 N.E.2d 84, 86–87 (1997); *Gonyea v. Gonyea*, see note 8, supra (error not to call child if requested, but not reversible error).

24. *Watermeier v. Watermeier*, 462 So.2d 1272, 1274–75 (La.App. 5th Cir.1985). An open judicial proceeding assures fairness in our judicial system. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 570, 100 S.Ct. 2814, 2824, 65 L.Ed.2d 973 (1980). In *Press–Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984), finding constitutional infirmity in the closing of the jury selection process in a criminal prosecution, said:

> The open trial thus plays as important a role in the administration of justice today as it did for centuries before our separation from England. The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known.

society as a whole." [25]  Undeniably, conducting such an interview raises due process and fundamental fairness issues, insofar as the parents are concerned.[26]  At conflict with the parents' basic due process rights is the child's right to be heard and to express a preference as to where he or she will live.[27]

¶ 14 The Wyoming Court also noted several due process implications which arise in custody litigation such as the parent's right to associate with and rear his or her child [a/k/a a "liberty interest" protected by the Fifth and Fourteenth Amendment to the Constitution of the United States], or to enjoy their children's companionship, and to direct upbringing.  When an *in camera* interview is proposed, other implications also arise such as the right to be apprised of all the evidence upon which an issue is to be decided and the right to examine, explain or rebut such evidence including the right to hear or cross-examine witnesses.  The Wyoming Court noted that when a judge interviews a child in private without the consent of a parent, the parent is deprived of due process inasmuch as he or she is unable to hear the evidence, and is not given an opportunity to explain or rebut statements made by the child.

¶ 15 Consequently, a balancing of parental due process rights with the child's right to be heard and the court's interest in hearing the child is obviously required.  Numerous courts have addressed the issue of how such an interview should be conducted, whether it should be recorded, and whether the parents should have access to the transcript to comport with due process implications.

¶ 16 In spite of the due process implications, *in camera* interviews are widely used as a means of discovering a child's custodial preference.[28]  In most cases, if the parents consent or agree to the interview, a trial court may hold an *in camera* custody preference interview without the parents.[29]  If a parent does not object to the procedure at

**25.** *KES v. CAT*, 2005 WY 29, ¶ 18, 107 P.3d 779, 785 (Wyo.2005) relies on and quotes from S. Bernstein, *Propriety of Court Conducting Private Interview with Child in Determining Custody*, 99 A.L.R.2d 954, 955 (1965).

**26.** See *KES v. CAT*, see note 25, supra; *Ex parte Wilson*, 450 So.2d 104, 107 (Ala.1984); *Muraskin v. Muraskin*, 336 N.W.2d 332, 335 (N.D.1983); *Jenkins v. Jenkins*, see note 8, supra; *Abbott v. Virusso*, 68 Mass.App.Ct. 326, 862 N.E.2d 52, 61 (2007); *Williams v. Cole*, 590 S.W.2d 908, 911 (Mo.1979); *Cox v. Cox*, 133 N.C.App. 221, 515 S.E.2d 61, 66 (N.C.App.1999); *Brown v. Burch*, 30 Va.App. 670, 519 S.E.2d 403, 408 (1999). *Rose v. Rose*, 176 W.Va. 18, 340 S.E.2d 176, 179 (1985); See also *Raper v. Berrier*, 246 N.C. 193, 97 S.E.2d 782, 784 (1957) (Open courts); *Smith v. Rhodes*, 16 N.C.App. 618, 619, 192 S.E.2d 607 (1972) (Right to hear evidence and refute it).

We have recognized that parental due process rights are in jeopardy when the parent is denied the right to cross-examine a guardian *ad litem* [*Kelley v. Kelley*, 2007 OK 100, ¶ 7, 175 P.3d 400]; and an *ex parte* report [*Malone v. Malone*, 1979 OK 21, ¶ 4, 591 P.2d 296].

**27.** See *Mackowski v. Mackowski*, note 23, supra, for a discussion of the rights of a child to express and preference and for that preference to be considered in making a custody determination. *Hughes v. Hughes*, 223 Wis.2d 111, 588 N.W.2d 346, 355 (1998) (Trial court required by statute to consider child's preference.).  See also *Oakes v. Oakes*, note 8, supra, for a discussion of why the courts have an interest in hearing from the child and why the child's preference is relevant.

**28.** There are at least two American Law Reports on the subject. D.W. O'Neill, *Child's Wishes as Factor in Awarding Custody*, 4 A.L.R.3d 1396 (1965) and S. Bernstein, *Propriety of Court Conducting Private Interview with Child in Determining Custody*, 99 A.L.R.2d 954 (1965). Countless law review articles have also been written on the subject.  Two include Cathy J. Jones, *Judicial Questioning of Children in Custody and Visitation Proceedings*, 18 Fam. L.Q. 43 (1984) and Barbara A. Atwood, *The Child's Voice in Custody Litigation: An Empirical Survey and Suggestions for Reform*, 45 Ariz. L.Rev. 629 (2003).

**29.** *Ex parte Berryhill*, 410 So.2d 416, 418 (Ala. 1982) (in absence of waiver or consent, private interview cannot be condoned); *Jackson v. Smith*, see note 8, supra; *Jenkins v. Jenkins*, see note 8, supra (due process concerns if interview in private over objection of either party); *In re Marriage of Slayton*, 86 Cal.App.4th 653, 659, 103 Cal.Rptr.2d 545 (2001); *Nowak v. Nowak*, 546 So.2d 123, 124 (Fla.App.1989); *Shaw v. Shaw*, 455 So.2d 1156,(Fla.App.1984); *Cunningham v. Cunningham*, 787 N.E.2d 930, 937 (Ind. App.2003); *Cox v. Cox*, see note 26, supra; *Shepherd v. Shepherd*, 273 N.C. 71, 159 S.E.2d 357 (1968); *Christopher v. Christopher*, see note 23, supra; *Rose v. Rose*, 176 W.Va. 18, 340 S.E.2d 176, 179 (1985); *KES v. CAT*, see note 25, supra. Parental acquiescence may be implied where the parents had an opportunity to object to the interview, but did not do so. *In the Matter of H.S.F.*, 177 N.C.App. 193, 628 S.E.2d 416, 420 (2006). Consent has also been conditioned upon a court reporter being present. *Ex Parte Wilson*, see note 26, supra. It has also been held that a trial

the time of the interview, then any objection is generally waived on appeal.[30] Even when consent is given, the courts usually protect the parents' due process rights by either allowing or requiring the parents' lawyers to be present during the interview or at least allowing the lawyers to either submit or ask questions, or both.[31] However, if the parent is acting *pro se*, the *pro se* parent is excluded from the interview altogether.[32]

¶ 17 Other various procedures have been developed, in attempts to resolve the conflict

court may interview even when one party objects to it. *In re Whitaker*, 36 Ohio St.3d 213, 522 N.E.2d 563, 568–69 (1988); *Brown v. Burch*, 30 Va.App. 670, 519 S.E.2d 403, 408 (1999) (when party objects, whether to hold interview depends on: age and maturity, matters to be brought forth, acrimony between parents, likelihood of improper influence and other factors); *Lincoln v. Lincoln*, see note 8, supra (no deprivation of fundamental right to interview, over objection, in absence of counsel). But see, *People ex rel. Mele v. Mele*, 26 A.D.2d 670, 272 N.Y.S.2d 445 (1966) (error to interview *in camera* over parent's objection). It appears that at the end of the 19th century and first half of the 20th century, many cases supported the broad conclusion that it is not necessarily improper for a trial judge to hold a private interview even though the parties have not consented. However, more current case law seems to recognize that such interviews are more often done with the parents actual or implied consent or stipulation. See generally S. Bernstein, *Propriety of Court Conducting Private Interview with Child in Determining Custody*, 99 A.L.R 2d 954 (1965).

30. If a parent neglects to object to the procedure at the time of interview, then any objection is waived on appeal *In re Marriage of Armbeck*, 33 Colo.App. 260, 518 P.2d 300, 301 (1974); *Branch v. Branch*, 631 So.2d 386 (Fla.App.1994); *Lawson v. Lawson*, 87 Idaho 444, 394 P.2d 1008,1010 (1964); *In re Marriage of Wanstreet*, 364 Ill. App.3d 729, 301 Ill.Dec. 706, 847 N.E.2d 716, 719–20 (2006) (statute requiring counsel to be present unless otherwise agreed upon by the parties); *Winkler v. Winkler*, 252 Ind. 136, 246 N.E.2d 375, 376 (1969) (cannot wait until outcome of interview to object); *Lehman v. Billman*, 178 Mont. 367, 584 P.2d 662, 665 (1978); *Marez v. Marez*, 217 Neb. 615, 350 N.W.2d 531, 535 (1984); *Swanston v. Swanston*, 502 N.W.2d 506, 508, fn. 2 (1993) (if not objection to procedure then nothing to review); *Cullen v. Prescott*, 302 S.C. 201, 394 S.E.2d 722, 724 (1990). See also *Goodmon v. Goodmon*, 779 So.2d 490 (Fla.App. 2000) (noting good practice would be for parties agreeing to such an interview waive right to appeal); *Christopher v. Christopher*, see note 23, supra (consent to private interview constitutes waiver of right to claim error of what occurred).

31. In *KES v. CAT*, see note 25, supra, the Court ultimately determined that such an interview should not be held if a parent objects. Rather, the parties or the court should fashion an alternative procedure such as an interview with counsel present or the interview being recorded. The Court also requires that the record reflect: 1) the child's competency to testify; 2) the child's stated preference; and 3) the weight given to that preference. See also *In re Marriage of Wanstreet*, see note 30, supra (by statute, counsel must be present unless otherwise agreed upon by the parties); *Baxendale v. Raich*, 878 N.E.2d 1252, 1255 (Ind.2008) (may interview with or without counsel present); *Truden v. Jacquay*, 480 N.E.2d 974, 978 (Ind.App.1985) (by statute, trial court has discretion whether counsel should be present); *Conkling v. Conkling*, see note 8, supra (recognizes that ordinarily counsel should be present); *Woods v. Woods*, 987 So.2d 339, 348, fn. 13 (La.App. 2 Cir.2008) (attorney's questioning is limited to the determination of child's competency); *Fernandez v. Pizzalato*, 902 So.2d 1112 (La.App.2005) (reversible error, in part, due to trial court's refusal to allow counsel to be present); *Duncan v. Duncan*, 528 S.W.2d 806, 809 (Mo.App.1975) (statutorily required to allow counsel present and to participate); *In re State v. Deal*, 740 N.W.2d 755, 760, fn. 1 (Minn. 2007) (must allow counsel present and allow "reasonable questions"); *Bowler v. Bowler*, 351 Mich. 398, 88 N.W.2d 505, 509 (1958) (due process objections may be met by presence of counsel for both parties in chambers); *Cox v. Cox*, see note 26, supra (even if parties object to interview, their due process rights are preserved if parent's attorney's are present); *Ottolini v. Barrett*, 954 A.2d 610, 613 (Pa.Super.2008) (by statute counsel must be present and must be allowed to interrogate the child); *Howard v. Howard*, 2005 WL 123494 (Tenn.Ct.App.2005) (in an unpublished opinion the court notes that it would be inappropriate to hold such an interview without the attorneys present); *Cunningham v. Cunningham*, 787 N.E.2d 930, 937 (Ind.App.2003) (no error where trial court refused to interview when both parents would not agree that the interview would be without counsel and without being recorded).

32. At least one court has held that there is no error in refusing to allow a *pro se* litigant in the *in camera* interview even when the opposing party's counsel is allowed in. The court reasoned that allowing the *pro se* parent in would hinder the child's ability to be forthcoming and would add pressure to an already stressful situation. However, the interview was recorded and made part of the record. *In re Marriage of Knoche*, see note 9, supra. In an unpublished case in Pennsylvania, the court concluded that it was not error to refuse to let the *pro se* parent in the interview. *Carbo v. Carbo*, 2008 WL 5573649 (2008).

between the parental due process rights with the child's right to be heard. For instance, a number of states require, either by statute or judicial holding, that *in camera* conversations with children must be recorded.[33] In other states, the presence of a court reporter can be waived,[34] or the record must be made only if requested by the parties.[35]

¶ 18 Taken together, 20 O.S. Supp.2007 § 106.4(A) [36] and 43 O.S. Supp.2002 § 113 [37]

**33.** *Ex parte Wilson,* see note 26, supra (recording required when permission was contingent upon court reporter's presence/general statute requires court proceeding be recorded); *Mattocks v. Mattocks,* 66 Ark.App. 77, 986 S.W.2d 890 (1999) (a record of such interviews must be made as required by administrative rule or by statute); *N.D. v. R.J.H.,* see note 1, supra at 1201 (because interview is part of court proceedings must be recorded and made available to the parties after the fact and to the appellate court); *Strain v. Strain,* see note 23, supra.; *Gingrey v. Lamer,* 315 Ill.App.3d 486, 248 Ill.Dec. 478, 734 N.E.2d 186, 188 (2000) (reversible error if interview is not transcribed and made part of record because the absence of a transcript would be prejudicial to the party who is not granted custody and provides no means of determining whether the trial court's decision constituted an abuse of discretion); *In re Marriage of Slavenas,* 139 Ill.App.3d 581, 93 Ill.Dec. 914, 487 N.E.2d 739, 741 (1985) (making a record is mandatory and cannot be waived); *Seniuta v. Seniuta,* 31 Ill.App.3d 408, 334 N.E.2d 261, 267 (1975) (to protect right of appeal, must make record or at least state for the record what child's statements were). *Woods v. Woods,* see note 31, supra (shall record); *G.S. v. T.S.,* 900 So.2d 1088, 1094 (La.App. 3 Cir.2005) (reversible error not to record); *Watermeier v. Watermeier,* see note 24, supra (without transcript, appellate court would be forced to trust completely without reservation the discretion of the trial court which would be contrary to adversarial system); *Abbott v. Virusso,* 68 Mass.App.Ct. 326, 862 N.E.2d 52, 61 (2007) (due process requires recording and available to parents): *Kumke v. Kumke,* 11 Neb.App. 304, 648 N.W.2d 797, 802 (2002) (pursuant to statute, must be recorded and cannot be waived). See *Nowak v. Nowak,* see note 29, supra and *Shaw v. Shaw,* see note 29, supra (unrecorded *in camera* interview could not be relied upon by trial court where parties objected to conducting interview in the absence of counsel and court reporter); *Gazdick v. Gazdick,* 557 So.2d 222 (Fla.App.1990) (failure to provide transcript was harmless when trial court did not rely upon children's preference in making decision); *Robison v. Lanford,* 841 So.2d 1119, 1125–1126 (Miss.2003); *Williams v. Cole,* 590 S.W.2d 908, 911 (Mo.1979) (must be recorded and cannot be waived because considering unrecorded testimony would be improper and failure to preserve it would preclude meaningful review); *Duncan v. Duncan,* 528 S.W.2d 806, 809 (Mo.App.1975) (statute required interview to be made part of record); *Schiele v. Sager,* 174 Mont. 533, 571 P.2d 1142, 1145 (1977) (error to hold hearing and not record); *Romi v. Hamdan,* 70 A.D.2d 934, 417 N.Y.S.2d 523, 524 (1979) (reversible error where trial court relied on child

preference but did not record); *Willis v. Willis,* 149 Ohio App.3d 50, 775 N.E.2d 878, 884 (2002) (trial court required to make a record); *Stolarick v. Novak,* 401 Pa.Super. 171, 584 A.2d 1034, 1038, fn. 1 (1991) (by statute required to be recorded and made part of record—well settled). *Haase v. Haase,* 20 Va.App. 671, 460 S.E.2d 585, 590 (1995) (if interview held over objection of the parties, record must be made); *Rose v. Rose,* see note 26, supra (when consent is not obtained must record); *Seelandt v. Seelandt,* see note 8, supra (either record or have trial court report the gist of what was said); *In the Matter of Marriage of Remillard,* 30 Or.App. 1111, 569 P.2d 651, 653–54 (1977) (in chamber interview upheld where trial court at least summarized preferences in the record).

Other ways have also been suggested as an alternative to recording including ways for counsel to observe such as the use of one-way mirror, or closed circuit camera. *N.D. v. R.J.H,* see note 1, supra. The Kentucky Court of Appeals, in an unpublished opinion held that even though the parents observed the interview on closed circuit monitor, it must be transcribed and made available to the parties. *Fields v. Fields,* 2008 WL 3551232.

**34.** *Walker–Seaman v. Garwood,* 456 So.2d 1331 (Fla.App.1984) (interview could be considered where parties stipulated that the parties, counsel, or court reporter would not be present); *In re Marriage of Armbeck,* see note 8, supra. See also *Truden v. Jacquay,* note 31, supra (by statute trial court has full discretion in deciding whether interview should be recorded); *Branch v. Branch,* 631 So.2d 386 (Fla.App.1994) (mother waived objection to interview without court reporter present); *Denningham v. Denningham,* 49 Md.App. 328, 431 A.2d 755, 757, fn. 3 (1981) (can waive presence of court reporter, but better practice is to record so that complete record is available on appeal).

**35.** *King v. King,* 636 So.2d 1249, 1253 (Ala.Civ. App.1994) (if parents consent, but do not request a court reporter, no error in conducting interview); *Talbot v. Pearson,* 32 Kan.App.2d 336, 82 P.3d 854, 858 (2004) (failure to record not error because statute contemplates request); *Dickison v. Dickison,* 19 Kan.App.2d 633, 874 P.2d 695, 701 (1994) (better practice is to record); *Fettig v. Fettig,* 619 S.W.2d 262, 268 (Tex.Civ.App.1981) (if no request for record is made, the issue is waived).

**36.** Title 20 O.S. Supp.2007 § 106.4(A), see note 3, supra.

**37.** Title 43 O.S. Supp. § 113, see note 6, supra.

**156**

do not fully resolve the conflicts between the parental due process rights of having an *in camera* interview transcribed with the child's right to be heard. For instance, 43 O.S. Supp.2002 § 113,[38] does not expressly address parental consent to holding an *in camera* interview. What it does do is:

1) require the court to determine that the best interest of the child will be served by expressing preference;

2) generally give the trial court discretion to consider a child's preference unless if the child is of sufficient age, [presumably 12 or older], in which case the court is required to consider the expression of preference or other testimony;

3) expressly allow counsel to be present, but provides that if the lawyers are not allowed in the interview, the reasons for their exclusion must be expressly stated by the trial court; [39]

4) in no case is the child's preference binding on the court or the only factor the court should consider; [40]

5) if the child is of sufficient age to form an intelligent preference, and the court does not follow the child's preference, the court shall make specific findings of fact supporting such action if requested by either party; [41] and

6) either party may also request that a transcript of the in chamber proceedings be made, but the statutes do not address whether or if the party is entitled to access of the transcript.[42]

■■■ ¶ 19 In order to provide a proper balance of parental due process rights with the child's right to be heard, we hereby adopt the following guidelines for trial courts to utilize when planning to conduct an *in camera* custodial or visitation child preference interview:

1) If the trial court or the parties consider the possibility of an *in camera* interview of the children, then the trial court, pursuant to 43 O.S.2001 § 113, must make and state on the record its preliminary determinations concerning whether the child's best interest is served by conducting such an *in camera* interview and whether the child is of a sufficient age to form an intelligent preference;

2) If the parents consent to the interview being in chambers, or otherwise waive their own presence, the judge may proceed with an *in camera* interview.

3) If one or both parents object to being excluded, the trial court must consider whether the parents want counsel present. This consideration should include whether to allow counsel to be present, allow counsel to question the child, or allow counsel to submit questions to be asked. Whether the trial court allows the counsel to participate in the questioning or submit questions is within the trial court's discretion. If no objection is made regarding this issue, the parties waive objection to the issue on appeal. If the judge proceeds with an *in camera* interview without counsel present, pursuant to 43 O.S.2001 § 113, the reason for counsel's exclusion must be stated on the record.

4) The next issue to be considered on the record is whether either or both parents request that a court reporter be present. If a request for a court reporter is made, the court reporter must be present and the interview shall be recorded—otherwise the parties waive objection to the issue on appeal.

¶ 20 Although we adopt these guidelines today, we realize that trial courts have not previously had a uniform procedure to follow. Nevertheless, following these guidelines will set forth the due process standards from which we will measure objections to or

---

**38.** Title 43 O.S. Supp. § 113, see note 6, supra.

**39.** Title 43 O.S. Supp.2002 § 113, supra. In *Hogue v. Hogue*, 2008 OK CIV APP 63, ¶ 12, 190 P.3d 1177 the Court of Civil Appeals noted that trial court's statement on the record that child would be more open and candid in discussing his preference with the judge without the attorney's present was sufficient reason stated.

**40.** Title 43 O.S. Supp.2002 § 113, see note 6, supra.

**41.** Title 43 O.S. Supp.2002 § 113, see note 6, supra.

**42.** Title 43 O.S. Supp.2002 § 113, see note 6, supra. Title 20 O.S. Supp.2007 § 106.4(A), see note 3, supra.

allegations concerning due process issues in custody/visitation cases in all future cases including those already in the appellate pipeline.[43]

## II.

**UNLESS THE PARENTS OR A PARENT APPEALS THE CUSTODY/VISITATION DETERMINATION, DUE PROCESS DOES NOT REQUIRE THAT EITHER PARENT HAVE ACCESS TO THE TRANSCRIPT OF THE *IN CAMERA* INTERVIEW OF THE CHILDREN MERELY TO SATISFY CURIOSITY.**

■ ¶ 21 Once a record is made, the question becomes whether it must be made available to the parties, and if so when? Again, the procedures vary from state to state. In some states, the record must be made available to the parties.[44] In other words, the record may be sealed from the parties, but must be made available for appellate review in an effort to protect the children's confidentiality, while still providing a basis of appellate review to protect the parents' due process rights.[45] Transcribing the matter and making it available to the court, but not to the parties, could satisfy the due process requirement stated in 20 O.S. Supp.2007 § 106.4(A).[46] Rarely are the parties completely precluded from ever knowing what transpired in the interview.[47]

¶ 22 Our research reveals one New Jersey case directly on point, and we agree with its

**43.** *Resolution Trust Corp. v. Grant,* 1995 OK 68, ¶ 22, 901 P.2d 807; *Harry R. Carlile Trust v. Cotton Petroleum Corp.,* 1986 OK 16, ¶¶ 16–19, 732 P.2d 438.

**44.** *N.D. v. R.J.H.,* see note 1 supra (record must be made available to the parties and appellate court because a meaningful appellate review can only be had if there is a record that allows the parties to challenge, and the appellate court to evaluate, the evidence and reasoning that underlies an adverse decision); *In re Marriage of Hindenburg,* 227 Ill.App.3d 228, 169 Ill.Dec. 187, 591 N.E.2d 67, 69 (1992) (record must be made available to the parties, but not immediately); *Holt v. Chenault,* 722 S.W.2d 897, 898–99 (Ky. 1987) (may not be sealed, must be made available to parents' counsel—otherwise prejudicial); *Nutwell v. Prince George's County Department of Social Services,* 21 Md.App. 100, 318 A.2d 563, 568 (1974) (unless waived, must be recorded and shared with parties and counsel); *Abbott v. Virusso,* see note 26, supra (due process and fundamental fairness requires interview be recorded and provided to parties); *Kuzara v. Kuzara,* 211 Mont. 43, 682 P.2d 1371, 1373 (1984) (when court interviews, record and finding should reflect child's wishes—otherwise interview is empty exercise); *Muraskin v. Muraskin,* 336 N.W.2d 332, 335 (N.D.1983) (sealing record from parties raises serious due process concerns); *In re Michael C.,* 557 A.2d 1219, 1220 (R.I.1989) (transcript read to parents and counsel, who were then allowed to submit written questions for cross-examination); *Callen v. Gill,* see note 8, supra (trial court cannot properly refuse to disclose information obtained) See also *Lavene v. Lavene,* 148 N.J.Super. 267, 372 A.2d 629, 631 (1977) (judge must disclose: if child has capacity; was preference made; did judge rely on it; reason for reliance and extent thereof); *Stolarick v. Novak,* see note 33, supra (interview must be transcribed and made part of record); *Haase v. Haase,* see note 33, supra (if done over objection of the parties, record must be made and available to parties); *Rose v. Rose,* see note 26, supra (if no consent to interview must make record and permit parties access to it by way of accurate or verbatim summary with opportunity for either party to contradict the accuracy of the facts given); *Inscoe v. Inscoe,* 121 Ohio App.3d 396, 700 N.E.2d 70, 86 (1997) (without access to transcript of interview, a parent cannot effectively challenge a trial court's determination of the reasoning ability of the child interviewed).

**45.** *Fernandez v. Pizzalato,* see note 31, supra (reversible error not to record, but suggest trial court could have sealed transcript and made it available for review); *Robison v. Lanford,* see note 33, supra (record must be made, but trial court's discretion whether to seal or unseal for review.); *Willis v. Willis,* see note 33, supra; *Donovan v. Donovan,* 110 Ohio App.3d 615, 674 N.E.2d 1252, 1255 (1996), and *Myers v. Myers,* 170 Ohio App.3d 436, 867 N.E.2d 848, 855–56 (2007) (required to record, but kept sealed except for appellate court review); *Franco v. Franco,* 81 S.W.3d 319, 332 (Tex.App.El Paso 2002) (if sealed, must be unsealed for limited purpose of briefing issues in appeal); *Ladd v. Bellavia,* 151 A.D.2d 1015, 542 N.Y.S.2d 81, 82 (1989) (transcript should be sealed and made available only to appellate court, unless trial court directs otherwise); *Sellen v. Wright,* 229 A.D.2d 680, 645 N.Y.S.2d 346, 348 (1996)(transcripts sealed and made available to reviewing court only).

**46.** Title 20 O.S. Supp.2007 § 106.4(A), see note 3, supra.

**47.** *Blue v. Brooks,* 261 Ind. 338, 303 N.E.2d 269, 272 (Ind.1973) (so long as it is clear that trial court's decision did not rest primarily on the results of the private interview, no error in excluding the results of the interview from the

result. In *Uherek v. Sathe*, 391 N.J.Super. 164, 917 A.2d 306, 308 (2007), *cert. denied by Uherek v. Uherek*, 192 N.J. 72, 926 A.2d 856 (2007), the court addressed whether a father, nearly four years after dissolution of marriage, was entitled to transcripts of the trial judge's *in camera* interview with the parties' child. The New Jersey rule,[48] like Oklahoma's statute 43 O.S. Supp.2002 § 113,[49] allowed for transcripts to be provided to counsel and the parties upon the payment of costs. After considering the underpinnings of the trial judge's obligation to conduct such an interview balanced with the litigant's right to know, the court stated:

> ... it remains true that a litigant's attempt to learn what a child has expressed to the judge would, if honored, do little but invade the child's private communications and **ought not be permitted absent a pending custody dispute.**
>
> The interview occurs in camera because the child is entitled to a degree of privacy which preserves, so far as possible, the child's "freedom of expression." *Lavene, supra,* 148 *N.J.Super.* at 272, 372 A.2d 629. To render such private statements more readily available than required by the de-

mands of due process and *R. 5:8–6,* would tend to jeopardize the court's ability to gain a full and frank exposition of a child's preferences and views. Simple common sense suggests that children, who are put in the predicament of being asked their preferences in a custody battle, will more openly express their views outside the presence of their parents or their attorneys. In the interests of both gaining the best evidence available and protecting the child's right to privacy in such matters, the child should be free to speak openly. This is less likely to occur if the child's verbatim comments are readily available. Of course, we recognize that *R. 5:8–6* permits the release of such information when there is a pending custody proceeding. But, **absent that circumstance, there is no existing basis for such a turnover, even to a parent, of the child's private communications and we find no reason to create such a right here.** (Emphasis supplied.)

¶ 23 Like the father in *Uherek, supra,* the petitioner here does not seek the transcript to rely on for an appeal of the custody dispute. In fact, no appeal has been lodged

record); *Wilson v. Gauck,* 167 Mich.App. 90, 421 N.W.2d 582 (1988) (court must state whether child was capable of expressing preference and whether the court considered preference, but was not required to disclose preference); *Lesauskis v. Lesauskis,* 111 Mich.App. 811, 314 N.W.2d 767, 768 (1981) (due process is not violated by not allowing counsel or parents or recording because the best interest of the child outweighs any possible benefit to the parent's right to appeal); *Myers v. Myers,* see note 45, supra (parents are not entitled to see transcripts because the best interest of the child trumps the parental due process rights which must be flexible); *Shioji v. Shioji,* 712 P.2d 197, 201 (Utah 1985) (parties may stipulate to interview and fact that it won't be recorded or made available for review).

48. The court in *Uherek v. Sathe,* 391 N.J.Super. 164, 917 A.2d 306, 308 (2007), *cert. denied by Uherek v. Uherek,* 192 N.J. 72, 926 A.2d 856 (2007), notes that the New Jersey R. 5:8–6 is a lengthy rule, consisting of eleven sentences and 258 words, but quotes the relevant portions below:

> *Where the court finds that the custody of children is a genuine and substantial issue,* the court shall set a hearing date no later than six months after the last responsive pleading. The court may, in order to protect the best interests

of the children, *conduct the custody hearing* in a family action prior to a final hearing of the entire family action. *As part of the custody hearing,* the court may on its own motion or at the request of a litigant conduct an in camera interview with the child(ren). In the absence of good cause, the decision to conduct an interview shall be made before trial. If the court elects not to conduct an interview, it shall place its reasons on the record. If the court elects to conduct an interview, it shall afford counsel the opportunity to submit questions for the court's use during the interview and shall place on the record its reasons for not asking any question thus submitted. A stenographic or recorded record shall be made of each interview in its entirety. Transcripts thereof shall be provided to counsel and the parties upon request and payment for the cost. However, neither parent shall discuss nor reveal the contents of the interview with the children or third parties without permission of the court. Counsel shall have the right to provide the transcript or its contents to any expert retained *on the issue of custody.* Any judgment or order pursuant to this hearing shall be treated as a final judgment or order for custody. [R. 5:8–6 (emphasis added).]

49. Title 43 O.S. Supp.2002 § 113, see note 6, supra.

regarding custody. Rather, he seeks the transcript merely to satisfy his curiosity. We agree with the rationale utilized by the New Jersey court, and decline to create a right to transcripts pursuant to 43 O.S. Supp. 2002 § 113 absent a pending custody dispute. Accordingly, we hold that unless a parent or the parents appeal the custody or visitation determination, due process does not require that either parent have access to the transcript of the *in camera* interview of the children merely to satisfy their curiosity.

### III.

### OKLAHOMA SUPREME COURT RULE 1.33, 12 O.S.2001 Ch. 15, App. 1 IS HEREBY AMENDED TO ADDRESS ACCESS TO TRANSCRIPTS OF *IN CAMERA* PROCEEDINGS IN CHILD CUSTODY/VISITATION DISPUTES.

¶ 24 Today's holding necessitates that we add subsection (f) and amend Oklahoma Supreme Court Rule 1.33(e), 12 O.S.2001 Ch. 15, App. 1 [50] as follows:

(f) Access to the Record by Parties or Counsel in Custody/Visitation Disputes.

When a parent intends to appeal a custody or visitation determination and the trial court has previously held an *in camera* interview with the child or children, and a transcript of the proceeding was taken either by order of the trial court or by request of the parties, the transcript shall be provided the parties upon request and payment of costs. If no appeal is taken, it is within the trial court's discretion whether to allow the parties access to the transcripts.

### CONCLUSION

¶ 25 Neither 20 O.S. Supp.2007 § 106.4(A) nor 43 O.S. Supp.2002 § 113(C) [51] expressly requires that a parent be provided with a transcript of a trial court's *in camera* interview in a custody/visitation proceeding.

When an *in camera* interview is proposed, due process implications arise and a balancing of parental due process rights with the child's right to be heard and the court's interest in hearing from the child is required. Because these statutes do not fully resolve this conflict, we have set forth the proper procedure for trial courts to utilize when conducting such interviews. If the proceeding is transcribed, the parties will be entitled to access to the transcript only if, a parent or the parents appeal the custody/visitation determination. Otherwise, whether the transcript remains sealed is within the trial court's discretion. Here, the father did not appeal the award of custody, and he is not required to be given access to the transcript merely to satisfy his curiosity. Oklahoma Supreme Court Rule 1.33, 12 O.S.2001 Ch. 15, App. 1 is amended to reflect our holding.

### ORIGINAL JURISDICTION ASSUMED; PETITION FOR WRIT OF MANDAMUS DENIED. OKLAHOMA SUPREME COURT RULE 1.33 AMENDED.

EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, KAUGER, WINCHESTER, REIF, JJ. concur.

OPALA, COLBERT, JJ., concur in part and dissent in part.

WATT, J., dissents.

TAYLOR, V.C.J., with whom OPALA, J., joins, concurring:

¶ 1 I concur in the majority opinion and write further to emphasize the need to preserve basic fundamental due process in child custody proceedings.

¶ 2 Child custody decisions are one of the most serious determinations a trial judge undertakes. The parent-child relationship is on the line in each of these trials. Once lost, the relationship is difficult to restore. These

**50.** Oklahoma Supreme Court Rule 1.33(e), 12 O.S.2001 Ch. 15, App. 1, currently ends with subsection (e) which provides:

e) Access to the Record by Parties or Counsel. Until a uniform rule of procedure has been promulgated by this court, the parties shall have access to the transcript and to the bound instruments on file in the trial court on such terms as that court may impose.

**51.** Title 20 O.S. Supp.2007 § 106.4(A), see note 3, supra; Title 43 O.S. Supp.2002 § 113, see note 6, supra.

trials must be conducted in a manner to assure due process rights of the parents and the child are respected.

¶ 3 In determining whether to interview a child without the parents or counsel present and over one of the parent's objection, the trial court must begin with two long-held principles in our law. The first is that court judgments and verdicts are based upon evidence presented in open court with all due process rights guaranteed. This principle of trial in an open court warns against private, secret, or confidential court proceedings. The second is that a parent has basic fundamental due process rights that include the right to be informed of the evidence used by the judge in deciding the contested issues in a case. A parent has a basic right to respond to any evidence that may be adverse to the parent's position. Any variance from these long-standing principles must not be lightly undertaken.

¶ 4 With these principles in mind, when a parent asks the judge to interview the child, the judge must make a preliminary determination of whether the child's best interest is served by conducting an *in camera* interview of the child. The judge must consider several questions in deciding whether to conduct an *in camera* interview. Is the child competent in all respects to give the interview? Has the child been influenced by either parent in anticipation of the interview? Is the interview the most effective method of seeking the absolute truth in the fact-finding process? All of these findings must be made a part of the trial record.

¶ 5 In addition to these preliminary determinations, when either parent objects to a child being interviewed *in camera* in the absence of the parents or the parents' attorneys, the trial judge must conduct a full and complete hearing on the objections and any responses to the objections and make a clear ruling on the objections and give the reasons for the ruling. The preliminary findings, the rulings, and the basis for the rulings should be made part of the record and should be included in an appellate record if an appeal is taken. These findings and rulings on the record insure that the trial judge has met the obligation of insuring the fundamental due process rights of both the parents and the child have not been violated. Nothing less is acceptable.

WATT, J., dissenting:

¶ 1 I dissent both from today's opinion and from the proposed rule change. Although the majority gives lip service to a plethora of reasons why an *in camera* interview serves the child's best interests, today, its opinion and proposed rule change may well sound the death knell to the utilization of this invaluable tool in future contested child custody matters. I also cannot agree with the immediate implementation of rule changes to causes in the appellate pipeline, altering the rules midstream in situations which involve the raw emotions of youth who have already been through the difficult rigors associated with placement proceedings.

¶ 2 The opinion and rule change most certainly destroy the foundational principle for courts to conduct "*in camera* hearings" with the children which principle is also the basis for any custody decision, that being "the best interests of the child/children". Today's order not only robs the trial court of its discretion but also destroys the court's most vital tool in making decisions with regard to custody and that is obtaining the trust of the child or children. No longer can a judge promise that degree of protection of **CONFIDENTIALITY** so that a child will be more likely to be forthright and honest in expressing his or her views during these *in camera* proceedings.

¶ 3 I would adopt the rationale expressed in *Myers v. Myers*, 170 Ohio App.3d 436, 867 N.E.2d 848, where the court stated, as follows:

> The requirement that the in **camera interviews** be recorded is designed to protect the **due-process** rights of the parents. The **due-process** protection is achieved in this context by sealing **\*\*856** the transcript of the in **camera interview** and making it available only to the court for review. This process allows appellate courts to review the in camera interview proceedings and ascertain their reasonableness, while still allowing the child to "feel safe and comfortable in expressing his opinions

openly and honestly, without subjecting the child to any additional psychological trauma or loyalty conflicts."

¶ 4 Accordingly, the sealing of the transcript and its inclusion in the record on appeal for review by the appellate courts in Oklahoma and using an abuse of discretion standard of review would protect the rights and best interests of the children while also affording the parents their right of due process.

¶ 5 By today's opinion and rule change, absent a complete waiver by all of the parties, "*in camera* hearings" as we have known them for decades will disappear.

¶ 6 With today's pronouncement and rule change, either parent need only file their petition in error, pay the filing fee, and obtain and pay for a copy of the transcript and then be free to "beat the child/children over the head with it" for comments made to the judge in chambers. When there is no appeal, the proposed rule allows parents to request that the trial court release the transcript when no appeal is filed. No responsible parent would want access to hearing results unless they intended to, at some future date, use it against the child or a former spouse.

¶ 7 Under today's order, thousands of children, at best, will leave the courthouses across this state with a bitter taste in their mouth for the judicial system or, at worst, result in mental or physical scarring that will remain for the rest of their lifetime.

¶ 8 Furthermore, instead of protecting the children and acting in their best interest, warring parents, consumed with bitterness for one another will now use their children as weapons in their domestic battle with the opposing spouse.

¶ 9 Finally, without any way to determine how many children will be affected by having their innermost thoughts revealed to warring parents, the majority imposes changes upon parents, children, and trial courts to which they had no notice when it makes the guidelines applicable "in all future cases including those already in the appellate pipeline." In the past, when rule changes have been imposed on the unsuspecting litigant, the rules

have been made applicable in the cause and prospectively to all petitions for certiorari filed thirty (30) days after final publication in the Oklahoma Bar Journal.[1]

¶ 10 Accordingly, I dissent.

---

1. *Hough v. Leonard,* 1993 OK 112, 867 P.2d 438.